In the Matter of the Application of JOHN L. WALSH, Respondent, Appellant, v. EDWARD F. BOYLE and Others, as Custodians of Primary Records, and as Commissioners of Elections of the City of New York, and PATRICK J. SCULLY, City Clerk of the City of New York, Respondents.

DEMOCRATIC COUNTY COMMITTEE OF THE COUNTY OF NEW YORK, Respondent.

REPUBLICAN COUNTY COMMITTEE OF THE COUNTY OF NEW YORK and MERTON E. LEWIS, Attorney-General of the State of New York, Appellants, Respondents.

First Department, August 16, 1917.

Elections — printing names of candidates on ballots — order of printing names where several persons are to be elected to same office — candidates of party successful at previous election entitled to priority — constitutional law — when member of State not disfranchised — courts cannot declare legislation void unless unconstitutional.

In printing on ballots the names of candidates for election to the five positions of justice of the City Court of the City of New York under the present statute, which abolishes party columns and provides for a group system for each office, it is proper for the board of elections to place at the head of the list the names of the candidates of the prevailing party at the last previous election, and it would be improper to print the names of candidates in rotation in different election districts as it would produce great additional trouble and confusion in the printing and distribution and counting of ballots.

The giving of such priority to the candidates of the party successful at the last election is not in violation of section 1 of article 1 of the State Constitution which provides that "No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Although five persons are to be elected as justices of the City Court, the names of all candidates should be placed in one section with a direction to vote for five only; the name of each justice should not be placed in a separate section.

The Legislature has power to fix the form of ballot to be used and unless its acts are violative of some constitutional provision they must be upheld by the courts.

Moreover, the court may not by mandamus attempt to direct the board of elections in the exercise of discretion vested in it by the Legislature in arranging the order of the names of candidates upon the ballot, unless

the action of the board is so unjust, arbitrary and discriminatory as to shock the conscience as violative of all right, decency and fair play.

SHEARN, J., dissented, with opinion.

APPEALS by the relator, John L. Walsh, and by the intervenors, Republican County Committee of the County of New York and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of August, 1917, denying in part an application for a peremptory writ of mandamus compelling the board of elections to print the names of candidates for certain judicial offices on the official ballot for the coming general election in a certain specified way.

*Herbert C. Smyth,* for the relator.

*Abraham S. Gilbert,* for the Republican County Committee.

*Leonard J. Obermeier,* for the Attorney-General.

*James A. Foley* and *John G. Saxe,* for the Democratic County Committee.

*Samuel J. Rosensohn,* for the Board of Elections.

*Albert S. Bard,* for the Citizens Union.

CLARKE, P. J.:

Section 331 of the Election Law provides generally for the printing of an official ballot. Subdivision 3 of that section has special reference to ballots for general officers.

" 3. Ballots for general officers. The names of all candidates for any one office shall be printed in a separate section, and the sections shall be in the customary order of the offices and shall be numbered from one upward by a numeral printed in the upper right hand corner of the section. The names of candidates shall be printed in their appropriate section in such order as the board of elections may direct, precedence, however, being given, except as herein otherwise provided, to the candidate of the party which polled the highest number of votes for Governor at the last preceding election for such officer, and so on. At the top of each section in the center

shall be printed on one line the title of the office. On the same line, to the left of such title and immediately above the emblems and voting squares, there shall be printed a direction as to the number of candidates for whom a vote may be cast, which direction shall be punctuated by an exclamation point. If two or more candidates are nominated for the same office for different terms, the term for which each is nominated shall be printed as a part of the title of the office. * * *." (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], § 331, subd. 3, added by Laws of 1913, chap. 821, as amd. by Laws of 1916, chap. 537.)

The board of elections pursuant to the provisions of this section, have arranged to print the names of the five candidates for justices of the City Court for the city of New York for full terms in one section, the names of the Republican candidates having precedence over the names of the Democratic candidates, and so on through the list of candidates of other parties. The board of elections have also arranged to print the names on the official ballot to be voted for at the official primaries. The order in which names are printed upon the primary ballot is provided in section 58 of the Election Law (added by Laws of 1911, chap. 891, as amd. by Laws of 1914, chap. 244) in the following language:

" The order in which the names of candidates shall appear under the title of an office shall be determined by the board or officer with whom designations are filed by lot in the presence of the candidates or their representatives, if present, and other persons required to be notified."

There are to be elected at the general election this year five justices of the City Court, each for the full term and one justice to fill an unexpired term. The relator is one of the sitting justices whose term is about to expire. He has instituted this proceeding to obtain a peremptory writ of mandamus to direct the board of elections, who are also custodians of primary records, as to the manner in which the names of the candidates shall be arranged upon the ballot, claiming that the method heretofore followed, and which it is agreed the board proposes to adopt this year, is unnecessarily arbitrary and discriminatory and hence void as unconstitutional in violation of section 1 of article 1 of the Constitution which

provides: " No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Section 5 of article 2 of the Constitution provides: "All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved."

Except in certain sections of the State where voting by the ballot machine is provided for, the Legislature has provided for a secret official ballot upon which are printed the names of all the candidates for all the offices to be voted for at a given election. After many years of experiment of various kinds it has adopted what may be termed a modified form of the Massachusetts ballot. In that State there is an educational qualification for voters and the candidates for office are grouped in alphabetical order in separate sections for each office to be filled without party emblem. There being no such educational qualification provided by the Constitution of this State, the Legislature, having done away with the party column system of ballot, by which one cross made in the circle at the head of the party column voted all the candidates of the party from Governor to coroner, has provided the group system for each office, the party affiliation of each candidate being indicated by a party emblem on the same line with the candidate's name and to the left thereof. As the Court of Appeals said in *Matter of Hopper* v. *Britt* (203 N. Y. 155): "As long as the face of the ballot is a plane surface, which has always been the case with us, and there is a party column, some party must have the first place." So it has been provided since 1896 that precedence shall be given to the candidate of the party which polled the highest number of votes for Governor at the last preceding election for such officer. The validity of this rule seems never heretofore to have been questioned and it was assumed by the Court of Appeals in the case just cited. The provision which put a party column first on the ticket when the ballot contained party columns has been applied by the Legislature to the individual candidates in their respective groups now that

the party column has been abolished.  As some one must be first and there must be some rule as to who shall be first, the rule adopted was probably based upon the proposition of convenience to the greatest number decided by the result of the preceding election.

We find no difficulty with so much of the law, therefore, as provides for the initial place in each group to be given to the candidate of the prevailing party at the last previous election as this rule has been followed without question for twenty-one years, but it is claimed that when a certain number of officers are to be elected in the same group, as for instance, judges of the Court of Appeals, justices of the Supreme Court, justices of the City Court or coroners, that an unfair and discriminatory advantage is given to the earlier candidates against those lower down upon the list.    It has been recognized that there was some advantage in the higher position and, therefore, it was considered by the Legislature that an alphabetical arrangement would give an advantage to candidates whose names began in the earlier part of the alphabet over those lower down, and, therefore, to equalize the chances, to give a fair opportunity to the man whose name began with " W " with the man whose name began with " A," the Primary Law provided that the order in which the names of candidates should appear " shall be determined by the board or officer with whom designations are filed by lot in the presence of the candidates or their representatives, if present, and other persons required to be notified."

This one fair chance having been given for determining the position in the party group in which all had an equal chance, the board in the exercise of the discretion conferred upon it has preserved that order ascertained for the primary election, which is a part of our legal balloting machinery, for the general ballot, and it cannot be said that this method of determining precedence is any more discriminatory or arbitrary than any other method which might be picked out, for under any method which the wit of man could devise some one must be first and some one last.

The relator claims that the arrangement of all the candidates for justices of the City Court in one section with the instruction upon the face of the ballot to vote for five only

is improper, and that as each justice is a separate officer the candidates for each position should be in a separate section. But the office of justice of the City Court is one although there may be many justices and the law expressly provides for the inclusion in one section of all candidates for any one office. This has been the custom in this State for many years, the arrangement being based upon the proposition that each justice shall have a clear plurality over all other candidates for the office of justice. Any other arrangement might bring about minority representation. While this in the opinion of some might be desirable, it has not met with the general approval of the public or the Legislature.

This court is not vested with legislative powers. The Legislature has fixed the form of ballot to be used and unless its acts are violative of constitutional provisions they must be upheld. Nor should the court by mandamus attempt to direct the board of elections in the exercise of the discretion vested in it by the Legislature in arranging the order of the names of candidates upon the ballot, especially when that board follows the rule of action laid down by the Legislature in the preparation of the initial ballot in the scheme of election, to wit, the primary, unless its action is so unjust, arbitrary and discriminatory as to shock the conscience as violative of all right, decency and fair play.

The decision made by the learned justice at Special Term, which requires the board to print the names in rotation in different election districts, not only finds no warrant in law, but would introduce great additional trouble and confusion in our already complicated system of elections in the printing and distribution of the ballots and in the counting and in the canvassing of the votes, and in each election district there would be the same discrimination of some one being first and some one being last as now exists.

The conclusions drawn by zealous counsel from their arrangement of recent election figures are to a considerable extent theoretical and without facts to support them. Wherever there is an active contest, with the necessary publicity incident thereto, the candidates low in the lists have no difficulty in being elected, but, with the large number to be chosen and the consequent indifference of the public and ignorance of

the personality of said candidates, the electors may often decline to vote and so the discrepancies in the number of ballots may be accounted for. To substitute for this failure to vote an arbitrary arrangement changing the order in the several election districts in an attempt to average up ignorance and indifference seems a fanciful and far-fetched way to bring about an intelligent election of the best men for public officers. Any scheme of arrangement can be criticised as arbitrary and discriminatory when the mind is fastened upon the one proposition that position on the ballot is the important thing. But what the law provides is that the ballot shall furnish to each elector an opportunity to express his choice and if all the names are printed in the same style under the same appropriate headings each individual is given a fair and equal opportunity to express his own choice and no constitutional provision against disfranchisement is violated. Discrepancies in totals and failure to vote are attributable to ignorance, indifference and perhaps deliberation rather than to an arbitrary, discriminatory unfair ballot.

The order appealed from should be reversed and the motion for a peremptory writ of mandamus denied, but without costs.

LAUGHLIN, PAGE and DOWLING, JJ., concurred; SHEARN, J., dissented.

LAUGHLIN, J. (concurring):

I concur fully in the opinion of Presiding Justice CLARKE and in the views expressed by Mr. Justice SHEARN, excepting in so far as he holds that the determination to . print the names of the several candidates in the same relative position on all the ballots is unnecessarily unfair, arbitrary and discriminatory and that a writ of mandamus should issue prohibiting it.

SHEARN, J. (dissenting):

This controversy has to do with the proper order of printing the names of candidates upon the general election ballots where several individuals are to be elected to the same general office. In the case at bar the office is justice of the City Court of the City of New York, there being six terms to fill.

Section 331 of the Election Law provides generally for

the printing of an official ballot, and subdivision 3, having special reference to ballots for general officers, provides, among other things, as follows:

" 3. Ballots for general officers. The names of all candidates for any one office shall be printed in a separate section, and the sections shall be in the customary order of the offices and shall be numbered from one upward by a numeral printed in the upper right hand corner of the section. The names of candidates shall be printed in their appropriate section in such order as the board of elections may direct, precedence, however, being given, except as herein otherwise provided, to the candidate of the party which polled the highest number of votes for Governor at the last preceding election for such officer, and so on. At the top of each section in the center shall be printed on one line the title of the office. On the same line, to the left of such title and immediately above the emblems and voting squares, there shall be printed a direction as to the number of candidates for whom a vote may be cast, which direction shall be punctuated by an exclamation point. If two or more candidates are nominated for the same office for different terms, the term for which each is nominated shall be printed as a part of the title of the office.   *   *   *." (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], § 331, subd. 3, added by Laws of 1913, chap. 821, as amd. by Laws of 1916, chap. 537.)

The board of elections, following its usual custom, is arranging to print the names of all candidates for the office of justice of the City Court of the City of New York, for full terms in one section, the names of the Republican candidates having precedence and the order of printing the several names being determined by lot. The law prescribes no method for determining the order of printing names upon an official ballot, except among political parties, but the practice of the board of elections is to adopt the order in which the names appear upon the primary ballot, which order is, by section 58 of the Election Law (added by Laws of 1911, chap. 891, as amd. by Laws of 1914, chap. 244), required to be determined by lot.

Where several candidates are to be voted for in a group, it appears that in the elections held with this form of ballot,

evidently as a result of ignorance or indifference, a large percentage of voters, sometimes as high as thirty per cent, fail to vote for more than one candidate and in each party there is a shrinkage of approximately twenty per cent in the vote of each candidate from the first place to each succeeding lower place on the ballot. While there is no competent proof that the variance in the vote is due to the relative position of the names on the ballot, the figures and tabulations submitted strongly indicate that such is the case. The advantage of the first place in a group of four to six candidates is estimated by men experienced in the working of the Election Law to amount to fully 20,000 votes in a judiciary election in the counties of New York and Bronx. This situation has led to sharp criticism of the method of determining the order of printing the names by lot as one calculated to make the election of judges a sort of lottery, and in this proceeding the method and the group form of ballot are assailed as illegal.

It is contended first by the relator that each justice of the City Court of the City of New York holds a separate office and, as the Election Law (§ 331, subd. 3, as amd. *supra*) provides that " the names of all candidates for any one office shall be printed in a separate section," each vacancy should have a separate section on the ballot. In other words, nominations should be made not for the office of justice of the City Court but to fill a specified and particular vacancy. We agree with the learned justice at Special Term that this claim is unsound and would work an illegal discrimination against voters. It would not permit one to vote for two or more candidates whose names were printed in one section but would compel the voter to pick a single candidate from each pair or set. Further, it would lead to the election of judges who failed to receive the greatest number of votes. It is quite true, as was held in *People ex rel. Hart* v. *Goodrich* (180 N. Y. 522) that each justice holds a separate office in the sense that the title is distinct and no justice " has any concern to defend the title of the other," but as used in the Election Law all candidates for the office of justice of the City Court are candidates for one and the same office. That such was the intention is made manifest

by the requirement " if two or more candidates are nominated for the same office for different terms, the term for which each is nominated shall be printed as a part of the title of the office." This would be meaningless and superfluous if each vacancy were to have a separate section on the ballot on the theory that each was a separate office.

It is next contended by the relator that the determination of the printing order of the names of candidates by lot or chance is arbitrary, unfair and capricious, and unnecessarily so; that consequently the board of elections has not performed its duty of determining in a fair and lawful way the order of printing names and may be compelled so to do. The learned Special Term has not only adopted this view but has gone further and prescribed the method to be adopted by the board of elections, namely, by requiring the printing of the names of all the candidates in rotation " so that each candidate for an office will occupy each position upon the ballot held by candidates of the party nominating him an equal number of times so far as practicable." Whether the ingenious system worked out is the " ideal system " or not, it is quite beyond the power of the court to prescribe a method to be followed by the board of elections when the determination of the matter is committed to the board by the express terms of the statute. There is no similarity whatever between this case and *Matter of Duell* v. *Board of Elections* (205 N. Y. 79) or *Matter of Vass* v. *Britt* (209 id. 557), when the facts are closely examined. The merits of various plans, such as the alphabetical arrangement, the lot-drawing scheme or this rotation plan are in the first instance for the Legislature or the bodies to whom it has delegated its power. The court may determine the legality of any method adopted, but for the court to prescribe the " ideal plan " is, as it seems to me, the extreme of judicial legislation.

Nevertheless, if the board of elections will not voluntarily determine in a fair way, free from arbitrariness and unnecessary prejudice to the rights of candidates, the order of printing names on the ballot, it is of course competent for the court to compel it to do so, and one method of doing so is to require the board to desist from a method that is illegal.

While an election is held not for the benefit of candidates

but for the public benefit, it is also true that candidates have rights and interests that are entitled to protection. It has been held by the Court of Appeals in *Matter of Callahan* (200 N. Y. 59) that legislation, to be valid, must not discriminate in favor of one set of candidates against another. The board of elections cannot do what the Legislature could not authorize. Yet the proof shows that this disposal of places by lot and maintaining the same position on all the ballots in the several districts tends to work a rank distinction between candidates, so great as to be often determinative of an election. If it were necessary to have certain lucky candidates monopolize the same advantageous position on all the ballots, it would be fair and lawful, and within the power of the Legislature to provide that the order be determined by lot, but it is not shown to be necessary, and, therefore, the determination of the matter by chance, with its resulting unfair discrimination, is merely arbitrary and capricious, and is not a compliance with the statute.

It is quite true that the Court of Appeals said in *Matter of Hopper* v. *Britt* (203 N. Y. 144), dealing with the old party column ballot, that some party must have the first place and assumed that the provision of law giving the first party column to the party which polled the highest number of votes for Governor at the last preceding election for such officer was valid. But we are not dealing with a party column ballot and there was no showing of unfair discrimination between candidates in the case referred to. The practice of giving preference in position to the party which polled the highest number of votes for Governor at the last preceding election for such officer has been so long acquiesced in that the court should hesitate to declare unconstitutional the legislative act sanctioning it, especially where no serious prejudice or discrimination are claimed to result therefrom.

The presiding justice states, and indeed seems to base his conclusion upon the assumption, that where there are several names one must necessarily be first, and, this being so, the method of determining precedence by lot is as fair as any other system, even though prejudice and discrimination result. Of course where there are several names one has to be first, but it does not follow at all that the same name has

to be first upon all the ballots and in every election district. That is the whole point of the case. There is no necessity for this shown, nor can any be suggested. It saves some trouble on the part of the board of elections, and perhaps some expense, to determine the matter by lot or chance, but this does not seem to me to be a very persuasive reason for permitting the choice of judges to be largely influenced, if not actually determined, by a lottery, no matter how honestly and fairly the lottery is conducted. The prejudice and discrimination resulting from the present method clearly exist, the method is unnecessary, and it is, therefore, illegal.

It follows that the order appealed from should be modified by striking out the requirement that the board of elections adopt any particular plan prescribed by the court, and, as modified, affirmed, without costs.

Order reversed and motion for peremptory writ of mandamus denied, without costs. Order to be settled on notice.