In the Matter of the Application of ABRAHAM J. MULTER, Petitioner, for an Order Directing S. HOWARD COHEN, as President of the Board of Elections in the City of New York, and the BOARD OF ELECTIONS IN THE CITY OF NEW YORK, Respondents.*

Supreme Court, Kings County, September 3, 1935.

* Affd., 245 App. Div. 856.

*Friedman & Levine* [*Edward H. Levine* and *Martin M. Goldman* of counsel], for the petitioner and for Peter J. Brancato and others.

*Paul Windels, Corporation Counsel* [*Robert H. Schaffer* of counsel], for the Board of Elections.

*Sol J. Shapiro*, for Sylvester F. Sabbatino.

*Samuel M. Ostroff*, for Harris Hyman.

*Helen P. McCormick*, in person.

SMITH (PETER P.), J. This is an application for a peremptory mandamus order to compel the board of elections of the city of New York to conduct a new drawing or make a redetermination by lot of the order or respective positions upon the official primary ballot of the names of the persons designated, by petitions filed with the board, as candidates for nomination by the Democratic party at the primary election for the offices of county judge, register and sheriff of Kings county.

On August 13, 1935 (the last day on which designating petitions may be filed — Election Law, § 140), petitions were filed designating Edward J. Reilly, Morris Ornstein and Herman N. Frank as candidates, respectively, for the Democratic party nominations of county judge, sheriff and register. Thereafter, on August 19, 1935, one Abraham J. Multer, a qualified voter and an enrolled Democrat of the fourteenth election district of the second Assembly district, pursuant to section 142, filed objections to the petitions designating said Reilly, Ornstein and Frank. These objections, as appears from a copy thereof submitted to the court, were based on allegations to the effect that the petitions contained an insufficient number of valid signatures because many of the signatures are repeated or duplicated and because many of them· represent persons who are non-existent, not registered, or who do not reside at the addresses specified or within the county, or who are otherwise not qualified voters and will not be eligible to vote at the election; and that the petitions, with respect to the signatures and their verification and

authentication, the designation and selection of the committee and various other matters, do not conform with the provisions and the requirements of the Election Law.

Despite these objections the board on August 21, 1935, proceeded to determine by lot or drawing the order in which there shall appear upon the official primary ballot the names of the persons designated in the petitions filed with it. The objections were ignored and Reilly, Ornstein and Frank were included and participated in the lot or drawing.

With his objections thus pending and undisposed of, said Multer, as incidental thereto and in furtherance thereof, on August 23, 1935, by order to show cause, instituted this proceeding, in which he has been joined by some of the rival and aggrieved candidates, namely, Peter J. Brancato, Peter J. McGuinness and Aaron L. Jacoby, for the respective offices of county judge, sheriff and register. All of them, including Multer, hereafter will be referred to as the petitioners.

Thereafter, on August 24, 1935 (the last day to file specifications — Election Law, § 142), petitioner Multer filed specifications of his objections. Finally, on August 28 and 29, 1935, the board held hearings upon said objections and specifications and sustained the objections and declared invalid the petitions designating said Reilly, Ornstein and Frank.

In so far as petitioner Multer is concerned, he, being the person who filed objections pursuant to section 142, is the proper person to institute this proceeding; and it having been commenced in time (within ten days after the last day to file objections) the court has jurisdiction to summarily determine the question involved. It arises from and relates to the designation of candidates with respect to whose designating petitions objections were pending when the proceeding was instituted. (See Election Law, § 330, subd. 1.) In so far as the other petitioners, Brancato, McGuinness and Jacoby, are concerned, having joined in this application and having authorized the same attorney to represent them from the inception, and there being no time limitation for the commencement of this proceeding by them, they may be treated as the aggrieved candidates who have instituted this proceeding or on whose behalf it was instituted; and hence this court has jurisdiction since the question involved may also be deemed to affect the form of the ballot (§ 330, subd. 3). Moreover section 330 expressly states that the subjects over which the court has jurisdiction, as there set forth, shall be construed liberally.

Petitioners contend that under the circumstances the drawing or determination by lot for the order or position of the names upon the official primary ballot was premature and invalid. Respondents

Sabbatino, Hyman and McCormick contend that only one drawing or determination by lot may be had after the final date for the filing of designating petitions; that the time of this drawing is in the discretion of the board, and that the board has properly exercised its discretion in conducting the drawing on August 21, 1935, despite the pendency of the objections to some of the designating petitions.

The Legislature, within constitutional limits, has the power to regulate elections and to prescribe the manner in which the names of candidates or nominees shall appear upon the official ballots. (*Matter of Burr* v. *Voorhis*, 229 N. Y. 382, 388.) In this case the Legislature has definitely granted to every aspirant for public office the right to have determined by lot or drawing the position of his name on the official primary ballot. (Election Law, § 103.) Therefore, he is entitled to have this right protected and enforced, and it is beyond the power of any board or court either to interfere with it or to enlarge or diminish it. (*Matter of Duell* v. *Board of Elections*, 205 N. Y. 79, 83.) The issue here, therefore, resolves itself into the proposition whether or not there has been any interference with or deprivation of this right.

In the case at bar persons who were lawfully designated and were eligible as candidates in the primary election for the Democratic party nominations were compelled to compete with several persons who were in fact unlawfully designated and ineligible. Hence the latter were in no better position than strangers. It is clear that under the statute the right to compete in the lottery or drawing for the determination of the position of the names upon the ballot was limited only to those who were lawfully designated and eligible to have their names placed upon the ballot. As soon as this limitation is disregarded the lottery or drawing is thrown open to the public *ad infinitum*.

The statute (Election Law) places the duty and burden upon the board of elections to determine for itself, in the first instance, whether or not any petition or certificate of designation is sufficient and in compliance with the law. (§§ 102, 103, 142; *Matter of Booth*, 119 Misc. 243.) It will be observed that section 102 makes a definite distinction between the duties cast upon the board of elections in the city of New York and the duties cast upon any board of elections outside the city. It declares that only if the board of elections shall find the petition or certificate of designation " in compliance with this chapter," shall the names of the candidates thereby designated be printed upon the official ballot; but that any petition filed with any board outside the city of New York shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures. Moreover, in the city of New York, if a written

objection to a petition or certificate of designation is filed, then, under the recent amendment of section 142 (Laws of 1935, chap. 955), specifications of the grounds of such objections must be filed five days thereafter with the board of elections and the board is given express power " to make rules in reference to the filing and disposition of such petitions, certificates, objections and specifications."

In view of these provisions of the law, it cannot be said, as argued by respondents, that the board of elections is without authority to reject a petition simply because on its face it appears to be sufficient. While the rule is broadly stated to be that the board has no power to go behind any petition and must accept it at its face value (*Matter of Lindgren*, 232 N. Y. 59; *Matter of Frankel* v. *Cheshire*, 212 App. Div. 664, Second Dept., followed in *Matter of Cullmer* v. *Cheshire*, 213 id. 828, Second Dept.; *Matter of Murphy*, 189 id. 135, First Dept.), still this rule did not prevent the board from passing on the objections here raised, namely, that the petitions by reason of non-residence, non-registration, duplications, etc., do not contain sufficient valid signatures and do not otherwise comply with the requirements of the law. These objections relate to matters which are in the nature of ministerial duties for which the law prescribes the rule to be followed and leaves nothing to the exercise of judgment or discretion, and hence such objections devolve in the first instance upon the board (*Matter of Wicksel* v. *Cohen*, 262 N. Y. 446), and the board did, in fact, pass upon and sustain them.

Mention has thus been made of the power and duty of the board, in the first instance, to hear and determine objections filed because that bears upon its correlative duty to determine by lot or drawing the position upon the ballot of the names of the several candidates. The order or position on the ballot being a substantial right which has been recognized by the courts and which is regulated by statute, it is incumbent upon the board to protect and preserve it. This it clearly failed to do when it permitted candidates designated by unlawful petitions to participate in the drawing instead of declaring such petitions void and excluding the candidates, as it had the power to do. The statute is whittled away and its purpose is frustrated if the drawing is thus indiscriminately opened to all who may file petitions, irrespective of their validity.

Under the circumstances here, if the board is vested with discretion as to the time when the drawing shall be held, its plain duty, in fairness to all the candidates, was to postpone the drawing until it had first determined the validity of all the petitions and objections which had been filed. The statute clearly imposes such a duty upon the board which it cannot avoid by a mere perfunctory examination, especially when objections are duly filed.

Argument is made that if the drawing is thus delayed, then the board may find itself in a dilemma in the event the courts subsequently reinstate a petition which it rejected and for which it had left no space on the ballot. This does not follow, for in that event the courts have ample power to direct a new drawing to be had or to make such other provision as may be fair and just to all concerned. The point is, however, that every candidate validly designated has a right to compel the determination of his position on the ballot in competition only with those similarly designated. Any procedure which in effect exposes him to competition with the public at large is wrong, for it is contrary to the spirit and purpose of the law. It should not, therefore, be condoned or permitted to continue.

Respondents point to subdivision 3 of section 103 of the Election Law, which states that " If a vacancy in a designation or nomination be filled after the making, in the manner provided in this section, of a determination of the order in which the names of candidates for the office or position are to be printed, the name of the candidate designated or nominated to fill such vacancy shall be printed in the place so determined for the original candidate."

From this they argue the Legislature intended only one drawing to be had and that if a name was stricken out for any reason whatever the positions of the others were to remain exactly as originally drawn. This is a wrong conclusion. This subdivision must be read in conjunction with sections 135, 137, 138 and 139 of the Election Law. Sections 135 and 137, which deal with the form of the designating petition, expressly provide for a committee to fill vacancies. Sections 138 and 139 provide for the right of this committee to fill any vacancy which may occur by reason of the declination, death or disqualification of the candidate designated or by a tie vote. When all these sections are read together it becomes clear that subdivision 3 of section 103 contemplates only a vacancy which is to be filled by the committee named in the designating petition as provided in sections 135 and 137, and for the reasons specified in sections 138 and 139. Under such circumstances there is a mere substitution; no rights are lost or gained by any of the candidates. Only candidates who were validly designated have competed in the drawing. However, there can be no analogy between such a situation and the one at bar. Here, as already pointed out, candidates validly designated were compelled to compete with those invalidly designated, and thus the right of the former to a determination by lot of their positions on the ballot was prejudiced and impaired.

Therefore, it cannot be said that the Legislature by subdivision 3 of section 103 indicated that only one drawing was to be had in all events. Its prime concern and underlying policy rather were

to assure to every candidate lawfully designated a right to participate in the drawing with other such candidates and their lawfully designated substitutes, and it is the duty of the court to protect this right and foster this policy.

Respondents also raise the point that petitioners failed to make any objection when the board of elections proceeded with the drawing and failed to obtain an injunction preventing it from conducting the drawing. As the drawing was held before the board had made any determination of the objections on file, it was not incumbent upon petitioners in the absence of such determination to insist that the board refrain from conducting the drawing. Under the circumstances it was primarily the duty of the board first to pass upon the objections and then to hold the drawing in which only the candidates found by it to have been validly designated shall participate. The negligence of petitioners, if any there was, cannot excuse the failure of the board to perform the duty cast upon it under the law.

Reliance is placed by respondents on *Matter of Walsh* v. *Boyle* (179 App. Div. 582, 587, First Dept.). That case does not support them and is readily distinguishable. It is authority for the proposition that the court cannot, by mandamus, control the board of elections in arranging the order of the names upon the final ballot when the Legislature has vested the board with discretion relating thereto and the board has properly exercised this discretion by following the procedure prescribed by the statute with respect to the initial or primary ballot, namely, the drawing of names by lot. The controversy there related to and involved the grouping of the names of the candidates for election to the five positions of justice of the City Court. The court merely held it was proper to group the five names in one section and to place at the head of the list the names of the candidates of the prevailing party at the last election in accordance with section 331 of the Election Law (now section 105), and to determine the position of the others by lot, and that this practice did not violate any constitutional right. While the court there recognized the fairness of determining by lot the position of the names of the various candidates upon the ballot, it in no way touched upon the right of any candidate whose designating petition was rejected to participate in the lot or drawing.

A fair construction of the relevant provisions of the Election Law must lead to the conclusion that only the candidates who have been lawfully designated shall share in the drawing, and that it is incumbent upon the board of elections of the city of New York, in the proper exercise of its discretion and in the proper performance of its duty, to determine in the first instance whether or not desig-

nating petitions are in compliance with the law before the candidates or designees are included in the drawing. To permit to be included persons who from the very inception had no right to participate is to deprive the lawful candidates of the determination to which, as among themselves, they are entitled under the law.

The injustice of this practice becomes the more glaring when no reason is presented, as in the case at bar, why the board could not have postponed the drawing until, say, August twenty-ninth, when it disposed of the objections and determined who were the lawful contestants.

Petitioners' application for a peremptory mandamus order is granted.