John L. Larkin, J.
The Secretary of State has determined that insofar as the candidates for the position of Associate Judge *1002 of the Court of Appeals are concerned, their respective positions on the ballot to be used in the general election to be held in the State of New York, on November 7,1972, are to be as follows:

The Secretary of State made this determination of the respective positions on the ballot in the following manner: The Republican candidates are on the top, or first row, the Democratic candidates on the second row, the Conservative candidates on the third row, and the Liberal candidates on the fourth row, because that was the order in which each party polled the highest number of votes for Governor in the last gubernatorial election (gubernatorial election, 1970; Election Law, § 105).
As to the position of the Republican candidates on the Republican line, the Secretary of State has stated that those names (Gabrielli, Jones and Wachtler), were placed in the order in which they were certified to the respondent Secretary of State, since this is the customary procedure followed by the Secretary of State.
Having thus placed the Republican names, the Secretary of State contends that the possible arrangements of the remainder of the ballot are limited. This limitation is imposed by the fact that there are cross-indorsements. Respondent Gabrielli has Conservative support as does respondent Jones and petitioner Cooke. Therefore, the Secretary of State contends that respondent Gabrielli’s name on the Conservative line must be in the vertical column underneath his name on the Republican line. Respondent Gabrielli, being number one on the Republican line, must therefore also be number one on the Conservative line. Respondent Jones, being number two on the Republican line, must also be number two on the Conservative line. Petitioner Cooke, having Conservative indorsement, must therefore be number three on the Conservative line. Being number three on the Conservative line, the Secretary of State states that petitioner Cooke must therefore be number three on the Democratic line, in order to have each candidate’s name with bipartisan designation in a vertical line on the voting machine. The same is true with the other party designations, respondent Wachtler *1003 being number three on the Republican line must be number three on the Liberal line.
And so the Secretary of State determined the ballot positions as set forth above on these principles: (1) that the names of the candidates receiving more than one party nomination were to appear in the same vertical column so that the voting machines could be properly adjusted to lock the remaining levers; (2) that the Republican party would get the first row or Row A, the Democratic party the second row or Row B, the Conservative party the third row or Row C and the Liberal party the fourth row or Row D, in accordance with section 105 of the Election Law.
Pursuant to section 104 of the Election Law and within one week after the primary election nominating him as a candidate of the Democratic party, petitioner Cooke demanded by writing filed with the Secretary of State, that the order in which the names of the candidates of the Democratic party for Associate Judge of the Court of Appeals shall appear on the ballot for said election to be determined by lot.
On June 26, 1972, the Secretary of State advised petitioner Cooke that pursuant to his request, a drawing for positions on the ballot among the Democratic candidates would be held on Friday, June 28, 1972 at 11:00 a.m., at the Department of State, Albany. At the time stated by the Secretary of State, petitioner Cooke appeared and was advised by the Secretary of State that he would not be entitled, nor permitted, to participate in a draw; that he would be required to take the third position on the Democratic line and that there would be a drawing only as between respondents Meyer and Dembitz. The reason given petitioner Cooke was that because the Republican party had nominated Cabrielli, Jones and Wachtier, and petitioner Cooke had been indorsed by the Conservative party, that petitioner Cooke had no right to have his name appear opposite respondents Cabrielli and Jones, but would appear opposite respondent Wachtier.
Thereupon, the Secretary of State conducted a draw only as between respondents Meyer and Dembitz and respondent Meyer was designated to have drawn the first position and petitioner Cooke, who was not allowed to draw, was placed in the third position.
It is upon this set of facts and this determination of the Secretary of State, that the petitioner, a candidate aggrieved, secured an order requiring the respondents to show cause why a judgment or order should not be made declaring a nullity of the purported drawing and determination and directing the Secretary of State to conduct a drawing for positions of all three *1004 Democratic candidates for the office of Associate Judge of the Court of Appeals.
Pending the hearing and determination of this application, the Secretary of State was restrained from certifying to the various Boards of Election of the State of New York, the positions on the ballot for the Democratic candidates for the Associate Judge of the Court of Appeals.
This court, which issued the order to show cause and the temporary restraining order, heard the motion on the 9th day of August, 1972. The petitioner appeared, by counsel, as did the respondent Republican candidates, the Secretary of State appeared by the Attorney-General, and there were no appearances by the respondents Meyer, Dembitz or Martuscello. All briefs were filed by August 17, 1972.
Simply stated, the position of the petitioner is that he is absolutely entitled to a drawing for his position on the ballot and that the failure of the Secretary of State to make such a draw, violated subdivision 1 of section 104 of the Election Law and sections 6 and 11 of article I of the New York State Constitution and the Fourteenth Amendment of the Federal Constitution, the Equal Protection Clause and the Due Process Clauses of the New York State and Federal Constitutions.
The position of the Secretary of State is that subdivision 1 of section 104 of the Election Law by its terms, is limited to a situation where two or more candidates have been nominated by one party only and does not apply as in the instant case where candidates have more than one party indorsement. The Secretary of State further contends that because of the absence of clearly applicable statutory direction and because of the reasonable approach of the Secretary of State, that the petitioner is not aggrieved and the courts should not interfere with the exercise of discretion by the Secretary of State in arranging the ballot.
The respondents Gabrielli, Jones and Wachtler contend that the action of the Secretary of State was a proper exercise of his discretion and that to allow a drawing by lot in this instance would violate not the constitutional rights of the petitioner Cooke, but the constitutional rights of the respondents Gabrielli, Jones and Wachtler, because the effect of a drawing by the petitioner Cooke would in all probability, rearrange the positions of all the candidates on the ballot and therefore result in a forced drawing by the candidates on the Republican line, who do not wish to draw. *1005 The respondents further contend that the petitioner, by failing to object to his designation in the third column as a candidate for the Conservative party, has waived his rights to be placed in any other column.
Subdivision 1 of section 104 of the Election Law provides in part as follows: ‘ ‘ The officer or board who or which prepares the ballot on the voting machine shall determine the order in which shall appear, below the names of party candidates the nominations made only by independent bodies. Such officer or board also shall determine the order in which shall be printed, in a section of such ballot the names of two or more candidates nominated by one party or independent body, for an office to which two or more persons are to be elected; provided, however, that any such candidate may, by a writing filed with such board or officer not later than one week after the adjournment of the convention or the primary election nominating him, or otherwise not later than two days after the filing of the petition or certificate nominating him, demand that such order be determined by lot ”.
This court does not agree with the Secretary of State that the aforesaid section applies only where two or more candidates have been nominated by one party. The statute seems clear. The Secretary of State is to determine the order of the candidates on the ballot ‘ ‘ provided, however, that any such candidate may * # * demand that such order be determined by lot ” (italics supplied). To hold otherwise would be to determine that if a person is nominated by one party, he may have his position on the ballot determined by lot, but another candidate, nominated by more than one party, cannot. As to the candidate so denied, such a determination would be violative of his constitutional rights to due process and equal protection under the United States and New York State Constitutions.
The courts have recognized that the order or position on the ballot is a substantial right and a candidate is entitled to have this right protected and enforced (Matter of Mutter v. Cohen, 156 Misc. 564, affd. 245 App. Div. 856).
Thus, we have squarely before us the petitioner being denied what this court views as his statutory right under section 104 of the Election Law which, if granted, will in all probability, force the other candidates into other positions on their own lines and, in effect, force a drawing of Republican, Liberal and Conservative candidates, who did not request a draw.
The respondents cite Matter of Greitzer v. Power (10 A D 2d 921). In Greitser, which was a primary election, the Appellate *1006 Division affirmed the dismissal of a petition seeking a drawing by lot and in so doing, stated: “ The Board of Elections, presumably possessed of expertise in this area has in effect held that the provisions of section 104 of the Election Law are not practicable for application to the type of voting machine presently in use by the city (see Election Law, § 265) and therefore properly exercised the discretion given under subdivision 7 of section 242-a of the Election Law.”
The decision in Greitzer (supra) has been somewhat diluted by Matter of Delaney v. Power (19 A D 2d 779, affd. 13 N Y 2d 867). In Delaney, the Appellate Division commented on Greitzer and stated that the mechanical limitations under Greitzer have now been removed. The court allowed a drawing for ballot positions in a New York City primary.
The respondents in the instant case, contend that the apparent dilution of Greitzer (supra) by the Delaney case (supra) should not be effective in the instant case because the voting machines used in the greater number of the voting districts in the State of New York are still the same as were in use at the time Greitzer was determined by the Appellate Division, First Department.
Even if such be the truth, this court must consider Matter of Marasco v. Lomenzo (Special Term, Supreme Ct., Albany County, October 16,1970, affd. without opn. 35 A D 2d 779). In Marasco, we have an almost identical situation. Candidates for the office of Justice of the Supreme Court of the State of New York, were selected for their order on their respective lines by the Secretary of State in almost the identical manner as in the instant case.
In Marasco (supra), Carmine C. Marasco, an aggrieved candidate, was placed last by the Secretary of State on the Democratic and Conservative lines (the same situation as in petitioner Cooke’s situation in the instant case). In Marasco, as in the instant case, the petitioner asked for a drawing by lot under section 104 of the Election Law. The Secretary of State refused said draw and determined the order in which the candidates were to appear on the ballot, taking into consideration 11 the physical requirements of the voting machines to be utilized and the necessity to avoid voter confusion ” because of cross-indorsements. In Marasco, the Secretary of State, in his answer, contended that section 104 of the Election Law does not apply where a candidate has been nominated by more than one party. Special Term found that the petitioner had a right to draw for column position on the ballot after the Secretary of State had determined the order of names in each column. Thus, the court *1007 approved the manner in which the Secretary of State determined the names of the candidates to be placed in each column, but found that the petitioner had a right to draw to determine which column would be first on the ballot, which column would be second, and which columns would follow thereafter.
In the Appellate Division, the respondent Secretary of State contended that subdivision 1 of section 104 of the Election Law is not applicable when two or more candidates have been nominated by more than one party and relied very heavily on Matter of Greitzer v. Power (10 A D 2d 921, supra) hereinbefore set forth. The Appellate Division, in affirming without opinion the decision of Special Term in Marasco, implicitly rejected that contention.
To distinguish Marasco [supra), the respondents have taken the position that because the petitioner in the instant case did not make an election in regard to his position on the Conservative line, he has waived any right to a draw. With this contention, this court cannot agree. The affidavit of petitioner Cooke denies that he acquiesced to any position on the ballot and contends that the positions of the candidates on the ballot were not officially determined until after the Democratic primary of June 20, 1972, after which “ the successful candidates of the Democratic party and the resultant combinations with respect to the cross-indorsements would be known ”. Nor does the Secretary of State indicate anything to the contrary.
In discussing Marasco (supra) the respondents contend that Marasco is contrary to law and violates the constitutional rights of the other candidates, despite the fact that the decision was affirmed by the Appellate Division, Third Department. Respondents contend that it was a decision made in haste and although that may well be, this court cannot conclude that because it was made in haste, it was also made in error.
This court agrees that the effect of Marasco (supra) is to possibly change everyone’s position on the ballot as determined by the Secretary of State on one candidate’s request for a drawing. Nevertheless, it is the conclusion of this court that subdivision 1 of section 104 of the Election Law applies to any candidate; that the petitioner Cooke has made such a demand on the Secretary of the State in accordance with subdivision 1 of section 104 of the Election Law; and that he is, under the decision of Marasco (supra), entitled to a draw.
It may well be that the petitioner may draw number three, in which event the present arrangement set forth by the Secretary of State would remain.
*1008 The Secretary of State, pursuant to the authority vested in him by the Election Law, taking into consideration the physical requirements and the limitations of the voting machines to be utilized and the necessity to avoid voter confusion, may determine the column in which each candidate’s name shall appear. On proper application by any candidate, a draw must be held and in accordance with that draw, the Secretary of State shall place the various columns on the ballot. In this case, in which the candidates for an office to be filled by more than one person have been nominated or indorsed by more than one party, any candidate is entitled to a draw by lot for columnar position on the ballot after the order of names in each column has been established by the Secretary of State.
The petition is granted; the Secretary of State is directed to conduct a drawing forthwith, on notice to all candidates; that the drawing shall determine the position on the ballot of the columns of candidates as heretofore determined by the Secretary of State.
Petitioner submit order forthwith, on notice to all respondents, to Chambers, Courthouse, Kingston, New York.