Edward M. O’G-orman, J.
The petitioner and the respondent Couzens are candidates for the office of County Judge of Westchester County in the election to be held on November 7, 1972, The petitioner seeks an order striking the name of the respondent Couzens from its presently assigned position on the voting machine, as a candidate of the Liberal Party in the same column as that in which petitioner’s name appears.
*590 The Board of Elections of Westchester County has heretofore placed the names of candidates for the office of County Judge of Westchester County in two columns, in the manner hereinafter set forth, on the voting machines to be used in the election.
The respondent Couzens was nominated by the Republican Party to fill a vacancy in the office of County Judge which would occur on December 31,1972, as a result of the termination of the prior term. The petitioner was nominated to fill this vacancy by the Democratic Party and also by the Conservative Party. The Liberal Party undertook to nominate as its candidate the respondent Couzens, but because an inadequate number of signatures was obtained upon the nominating petitions, the attempt to nominate the respondent Couzens as a candidate of the Liberal Party was declared invalid by the respondent Board of Elections on May 19,1972.
All of the foregoing transpired prior to the 30th day of May, 1972, on which date the Governor signed into law a bill (L. 1972, ch. 746) which created an additional office of County Judge for the County of Westchester, and further provided that this office was to be filled in the election to be held November 7, 1972. Thereafter, the Republican Party duly nominated as its candidate for the additional office James R. Caruso, who also was the candidate of the Conservative Party. The Democratic Party nominated for its candidate for this office Herbert K. Kanarek, and the Liberal Party nominated for this office the respondent Couzens, all pursuant to the provisions of subdivision 7 of section 131 of the Election Law.
Confronted with this situation, and the duty of arranging the names upon the voting machines in such fashion as would prevent duplicate voting for any of the candidates, the Board of Elections has arranged the names of the candidates in two columns, as follows:
JUDGE OF THE COUNTY COURT OF WESTCHESTER COUNTY
Row A (Republican) JOHN C. COUZENS 7a JAMES B. CARUSO 8A
Row B (Democratic) ANTHONY B. MARASCO 7b HERBERT E. KANAREK 8b
Row C (Conservative) ANTHONY B. MARASCO 70 JAMES R. CARUSO 8C
Row D (Liberal) JOHN C. COUZENS 7b
Petitioner contends that such an arrangement is contrary to the true facts, arbitrary and misleading, and will work a fraud on the electorate. In petitioner’s view, the “ vacancies ” thus created in the office of County Judge by the expiration of the term of the respondent Couzens and by the creation of an addi *591 tional office to be filled in the November election are different in kind, and constitute separate offices, each requiring separate candidates and a separate election. Therefore, it is petitioner’s contention that inasmuch as the offices are separate and distinct, the respondent Couzens, having been nominated as a candidate of the Republican Party in May for the only vacancy which existed at that time, was no longer eligible to become a candidate of the Liberal Party to fill the vacancy created by the legislation of May 30, 1972. Petitioner places substantial reliance on Matter of Burns v. Wiltse (303 N. Y. 319). Petitioner argues that to permit the voters to vote for a candidate who is simultaneously a candidate for these “ separate ” judicial offices would result in disenfranchising a large portion of the electorate because of the rule that one candidate cannot fill two elective offices simultaneously.
Petitioner further argues that petitioner will be at a disadvantage in the election if the name of his Republican opponent Couzens should also appear on the Liberal Party line in the same column with his own, because by such appearance the false impression might be given that the said respondent had originally been validly nominated for that office when it was the sole vacancy to be filled.
It seems clear that a matter involving the selection of candidates for this major office, and the proper method of balloting, should not be determined by an exercise in semantics. The fact that the original office was a vacancy created by the expiration óf a term, and the fact that the office created subsequent in time was a new vacancy to be filled in the same election, are not differences which should make any difference. The simple fact is that there are identical judicial offices to be filled in the election on November 7, 1972. The question as to whether such offices are “ separate ” offices or are one office has long been set at rest in Matter of Burr v. Voorhis (229 N. Y. 382; see, also, Matter of Walsh v. Boyle, 179 App. Div. 582).
Coming to a further argument of petitioner, it would seem clear that, while it is true that the respondent Couzens could not be elected to both of these offices, this fact does not, of itself, disqualify him from running for the office under these circumstances. Matter of Burns v. Wiltsie {supra) has laid down the sound rule that a candidate may not reserve to himself any option of determining which of two offices he will ultimately retain, because by so doing he will have disenfranchised those who voted for him for the office he rejects (see Mark v. Van Wart, *592 68 Misc 2d 40, 42; see, also, 2 Gassman, Election Law [2d ed.J, § 100, p. 539).
In the present case, not only is the candidate Couzens qualified to hold the office which is being sought, but the arrangement on the voting machine selected by the Board of Elections will eliminate the possibility that any one of the candidates can be elected to fill more than one office. As is customary with multiple judicial positions, the ballot must contain the legend “ Vote for any two ”. (Election Law, § 105-a.) This device, coupled with the capacity of the voting machine to lock levers over duplicate names in each vertical column, once a vote has been cast on one party line, will prevent voting twice for any one candidate, will permit the selection of any two candidates, and will give the voter a complete choice ranging over the total of the selections of all of the parties.
An examination of the arrangement of these names as proposed by the Board of Elections, when considered in the light of the fact that the voting machine levers will only lock in a vertical column, clearly demonstrates that the arrangement proposed is the only arrangement of names in which this result can be achieved in this case.
It has already been decided that the right of a particular political party to vote for its candidate on the same line as are contained the names of its other candidates, and on which its own emblem appears, is an important right to be preserved (see Matter of Smyth, 198 Misc. 604; Matter of Aurelio v. Cohen, 266 App. Div. 603, affd. 291 N. Y. 645; Election Law, § 248).
Petitioner’s argument that the respondent Liberal Party’s original failure to nominate a candidate for County Judge bars it from nominating the same candidate to a similar office subsequently created, is neither supported by any provision in the Election Law nor required by any consideration of public policy. The respondent Liberal Party has already been penalized for its original failure, in that it can now nominate only one candidate for an office for which, but for its original failure, it might have nominated two candidates. There appears no justification for adding to that penalty by denying to the Liberal Party its first choice for the remaining office.
It is also clear that the principal objective of the Election Law is to give the electorate a full and fair opportunity to express its choice among the candidates presented, within only the reasonable limitations of the time available, the space available and the machinery available to carry out the tabulation of the ballots. Where these important rights of the electorate and *593 the political parties involved are concerned, the real or imaginary tactical advantages of a particular candidate must yield so that the principal objective of the elective process can be preserved.
Petitioner’s conclusion that he will be prejudiced as a tactical matter by having his name appear in a column in which his opponent’s name appears twice has not been clearly demonstrated. There seems little chance that the electorate will be prejudiced by the proposed arrangement of names on the ballot. It seems amply clear that, given the operational limitations of the voting machines, the arrangement selected by the Board of Elections is neither arbitrary nor capricious, but rather I find it to be a reasonable one under the circumstances. As the court stated in Burr v. Voorhis (229 N. Y. 382, 395, supra.): “ It is axiomatic that there must be limitations and systemization in the exercise of the elective franchise in order that it may be practicable, efficient, intelligent and honest. Legislative regulations which are reasonable and effect equality, as far as may in practical working be, cannot be rightfully said to contravene any constitutional right. The courts cannot condemn restrictions for a legitimate purpose and reasonably adapted to effect the purpose. The method of the respondents stands those tests. The wit of man cannot devise a method transcending all inequality and discrimination.”
In a case involving facts very similar to those involved in this case, a similar result has been reached (see Mastrella v. Commissioners of Elections for Monroe County, 58 Misc 2d 31 [Sup. Ct., Monroe County, 1968]).
The candidates Caruso and Kanarek have not been made parties to this proceeding.
The relief sought by petitioner must be denied.