In the Matter of GEORGE W. SMYTH, Petitioner, against WEST-CHESTER COUNTY BOARD OF ELECTIONS et al., Respondents.

Supreme Court, Special Term, Westchester County, September 28, 1950.

*Clarence C. Meleney* and *Henry J. Smith* for petitioner.

*Harry G. Herman, County Attorney,* for Westchester County Board of Elections, respondent.

*William V. Welch* for Dutchess County Board of Elections, respondent.

*Herbert E. Henion, County Attorney* (*Jean Davidson* of counsel), for Rockland County Board of Elections, respondent.

FLANNERY, J. This is an application under section 330 of the Election Law to require the boards of election of the counties of Westchester, Orange, Rockland, Dutchess and Putnam, composing the Ninth Judicial District, to provide a separate line or row for the Independent Judiciary League and its sole candidate on the official ballots or voting machines in the general election to be held November 7, 1950, and also to direct said boards to print at the top of columns 6, 7 and 8 on said ballots and machines the instruction, "Vote for any three named in columns 6, 7 and 8." The election boards of the counties of Putnam and Orange did not appear on the return of the order to show cause or file any papers or briefs in opposition.

The petitioner has received an independent nomination, for the office of Justice of the Supreme Court in and for the Ninth Judicial District, from the Independent Judiciary League, an independent body, as described and mentioned in the Election Law. Two days after the nominating petitions of the Independent Judiciary League were filed in Albany, placing the petitioner in nomination for one of the three vacancies in that district, the petitioner was also nominated on September 9, 1950 as a candidate for the same office by the Democratic Party and the Liberal Party. He has accepted all three nominations.

The respondents who appeared on this application propose to place the name of the petitioner on the ballot in the Democratic Party row as a Democratic candidate, and in the Liberal Party row as a Liberal Party candidate, for Justice of the Supreme Court, but have decided that, under the provisions of section 248 of the Election Law, neither he nor the Independent Judiciary League, which nominated him as an independent, is entitled to a separate listing as an independent candidate or group, and do not propose to list him or it separately in a separate row. It is also conceded that there are sufficient rows to give an independent listing on the machine and paper ballots, and that no physical or practical difficulties prevent it.

The opposing respondents rest their position on the language of section 248 of the Election Law which provides that, when the same person has been nominated for the same office by " more than one party " and also by " one or more independent

bodies," his name shall appear in each party row and " the name and emblem of each such independent bodies shall appear in one such row or column to be designated by the candidate in writing filed with the officer charged with the duty of providing ballots * * *." On the basis of this, the election boards intend to place the name and emblem of the Independent Judiciary League in the Democratic row, to indicate petitioner's affiliation with and nomination by that group, and have refused his request that the league and his name as its sole candidate be listed in a separate row.

It appears from the record that many independents and enrolled Republicans who wish to support the petitioner by their votes, approximately seven thousand in number, have combined to place him in nomination as an independent candidate. Many of these, particularly the enrolled Republicans, will find it very distasteful and certainly contrary to their political principles and sympathies, as well as practices, to vote for him on the Democratic party line where, regardless of the appended emblem and name of the Independent Judiciary League, he will appear as a Democratic candidate seeking the votes of Democratic electors, or on the Liberal party line where, with no other emblem or name appended, he will appear in no other possible capacity than as a Liberal party candidate. Clearly, the independents and the enrolled Republicans who desire to vote for the petitioner will be presented with the necessity to surrender their principles or their desire to vote for the petitioner, when they vote for one of the offices of Justice of the Supreme Court to be filled in the Ninth Judicial District, and it seems equally clear to the court that many of them will withdraw their votes from the petitioner entirely rather than cast a vote for him either as a Democrat on the Democratic party line, or as a Liberal on the Liberal party line, and it is equally clear that these voters, who otherwise would vote for him *as an independent,* will thus be disfranchised in the election of at least one Supreme Court Justice, and this court so finds. There can be no doubt that this will be an unnecessary discrimination between the independent and the party voters in the facilities offered them for prompt and intelligent and ready expression of their choice.

The facts, as they appear in the record and as the court has hereinabove found them, are analagous to those in *Matter of Aurelio (Cohen)* (291 N. Y. 176) except that there the candidate of one party, the American Labor party, had two independent

nominations, one from the Integrity party and one from the Justice party, two independent organizations or groups. The problem here is to determine whether the possession of two party nominations by the petitioner so differentiates and distinguishes his position from that of Mr. Levy in the *Aurelio* case, that he is deprived of his right to a separate row for his independent group and nomination. At the time when *Matter of Aurelio* was decided, the pertinent portions of section 248 of the Election Law read exactly as they now read, and neither then nor now was or is any provision made specifically for the rule when a candidate has a single party nomination, and one or more nominations from independent groups or bodies. The contention of the respondents is that since the section of the Election Law expressly provides for disposition as they have made it, the *Aurelio* case is distinguishable. However, the decision in the *Aurelio* case rested upon the constitutional incapacity of the Legislature to disfranchise any citizen or deprive him of any rights or privileges, and the court there expressly stated that, although there was no provision in the Election Law to sanction the appearance of Mr. Levy's name in any line other than that on which appeared the names of candidates nominated by the American Labor party, since the section could not have contravened the Constitution by forbidding it, he was entitled to it. Here, the Legislature has expressly provided for possible discrimination. It has made a regulation or a restriction which in some circumstances may, and in the circumstances of this case certainly will, discriminate unnecessarily between the independent or the Republican voter who wishes to vote for the petitioner and the party voter of the Democratic or Liberal party who may also wish to vote for him. Its effect is to require the independent or the enrolled Republican to vote for the petitioner either in the Democratic or the Liberal row, and to that extent support one of those parties, regardless of the voter's predilections or preferences, regardless of his political principles or his political practices. This, the decision, in *Matter of Aurelio,* condemned.

Accordingly, the court will direct that, in addition to the appearances of his name in the Democratic party row and in the Liberal party row, the name of the petitioner should appear as the sole candidate of the Independent Judiciary League in a separate row.

The petitioner also complains that the Boards of Election intend to place over the head of the columns containing the

names of the candidates for Justice of the Supreme Court the words '' Vote for Three '' and asks that they be directed to amend them to read, '' Vote for any three in columns 6, 7, and 8.'' Petitioner believes that this will be clearer and remove any possibility that a voter will think that he cannot vote for two candidates whose names appear in the same column. The court is not persuaded of the correctness of this view, but the suggested amendment by the petitioner is not only without any authority anywhere in the Election Law, but carries in itself the possibility of confusion because the voter will be as likely to think that he is confined to three in either column 6, 7 or 8 by the petitioner's form as he would be to believe that he was confined to one in each column by the form adopted by the boards and exemplified in the Election Law. Accordingly, petitioner's request to change the language will be denied. Submit order.