In the Matter of VITO P. BATTISTA, Respondent, *v.* JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, et al., Appellants.

First Department, October 25, 1965.

*Robert E. Hugh* for appellants.

*Justin N. Feldman* for Abraham D. Beame.

*Robert MacCrate* of counsel (*David W. Peck* with him on the brief), for John V. Lindsay and others, appellants.

*Marc P. Cherno* of counsel (*Strasser, Spiegelberg, Fried & Frank,* attorneys), for Democrats for Lindsay-Mollen-Costello.

*Maurice A. Reichman* for Gerald J. Turetsky and others, intervenors-appellants.

*Lewis Abrahams* for respondent.

*Per Curiam.* The issue presented on this appeal concerns the form of the ballot as it will be presented to the voters in the City of New York on Election Day, November 2, 1965. As the ballot is now constituted pursuant to the decision of Special Term it consists of seven columns, lettered A to G, inclusive. Four of these columns are allotted to political parties, three to political bodies, as those terms are used in section 248 of the Election Law. The Lindsay candidates (other than those for local offices) appear in the columns of the Republican and Liberal parties, the Beame candidates in that of the Democratic party, the Buckley candidates in that of the Conservative party. The fifth column, Column E, was allotted by Special Term to the Beame candidates as representing the Civil Service Fusion party, a political body, Column F to the Battista candidates as representing the United Tax Payers party, also a political body, and Column G to the candidates of other bodies (two in number). Prior to Special Term's decision, Column E was allotted to the Independent Citizens party, a political body (Lindsay); Column F to the candidates of the Civil Service Fusion party (Beame); and Column G to the candidates of the remaining bodies, including the Battista ticket.

Special Term made the changes indicated on the reasoning that section 248 of the Election Law provides that if a candidate is the nominee of two or more political parties he is not entitled to a separate line or column for being the candidate of a political body. Lindsay being the candidate of two parties was therefore precluded from an additional line. The line thus vacated was awarded to the Battista ticket as the political body having the greatest number of signatures of the three bodies not already disposed of. Previously the Board of Elections had taken Column F from Battista and awarded it to Beame on the theory that the nominee of but one political party is entitled to a column for an additional nomination by a political body. It is on Battista's application to have his column restored that this proceeding was initiated.

While we agree that the directions of section 248 are as indicated in the decision below, a literal following of the statute is not required where to do so would work an inequity to any candidate or tend to interfere with a free choice by the electorate (*Matter of Belford* v. *Board of Elections of Nassau County*, 306 N. Y. 70). In the *Belford* case one candidate who appeared as

the nominee of three political parties was allowed over objection an additional line as the candidate of a political body because the signatures on the petition of the political body indicated that a substantial portion of the electorate chose to support him under that designation. Decisions upholding the strict wording of the statute have been careful to point out that under the facts there presented no inequity could result (see *Matter of Lazer* v. *McNab,* 19 A D 2d 830, 831, affd. 13 N Y 2d 935).

In fact the duty of the court pursuant to section 330 of the Election Law is to resolve questions where possible in a way that allows a fair ballot to be submitted to the electorate, having due regard to the situation presented. Considerable exercise of discretion has been approved in this regard (*Matter of Lazer* v. *McNab, supra*).

With these considerations in view, we turn to an examination of the equities. It appears that the original allocation of the Board of Elections in September gave Column E to the Independent Citizens party (Lindsay). That body presented a petition of nearly 49,000 signatures, just under the number required for a petition for Governor, and far exceeding the number found in any other petition. While the figure is not a significant percentage of the eligible voters in a mayoralty election, it nevertheless represents an extraordinary number for a petition for that office. Moreover, it appears that the candidate has conducted an extensive campaign directed to voters other than those enrolled in the Republican and Liberal parties to obtain their franchise under this Column E. It is recognized that in many instances party members wishing to vote outside their party, as well as voters not affiliated with any party, will vote for a candidate under an independent designation but not under a regular party designation. This is a predilection which should not be ignored (*Matter of Smyth* v. *Westchester County Bd. of Elections,* 198 Misc. 604). Furthermore, this application, while not dilatory, appears on the eve of election. The necessary work required to enlist a following under Column E has been done and cannot be undone. It would hardly be equitable at this late date to allow it to be used to a candidate's disadvantage.

As opposed to this consideration is the fact that the Democratic candidate appears as the candidate of a single party and is eligible for a column as the nominee of a political body if one is available. Fortuitously, a solution resolving both of these situations can be found. It appears that the voting machines can accommodate eight columns. This would mean that the Independent Citizens party could retain its column and the

Beame and Battista tickets could also have their columns. The order herein so provides.

Order should be modified, on the law and the facts and as a matter of discretion, to provide that the ballot contain eight columns, Columns A, B, C, D and F as at present constituted, Column E for the Independent Citizens party, Column G for the Civil Service Fusion party, and Column H for the candidates of other independent bodies, and, as so modified, affirmed, without costs.

RABIN, J. P. (dissenting). We should not by judicial amendments legislate out of existence what the Legislature clearly and expressly enacted as the law. Whether a candidate who has the nomination of two regular parties should be entitled to a third column on the voting machine when nominated by an independent body is for the Legislature and not for the courts to decide. And the Legislature has spoken. Section 248 of the Election Law provides that such a candidate may not have an additional line.

True, the Court of Appeals in the *Matter of Belford* v. *Board of Elections of Nassau County* (306 N. Y. 70) did, by a divided court, allow an extra line to a candidate having the nomination of more than one regular party. However, it did so because the independent party nominating such candidate had signatures corresponding to almost 22% of the entire electorate — a most unusual circumstance — and it therefore accepted a finding of the Appellate Division that a " strict observance of the letter of section 248 * * * would interfere unnecessarily with the intelligent and ready expression of choice by an independent voter." (282 App. Div. 891.) Nor was the court obliged to consider the practical problem of space limitation on the machine with which we are here concerned. However, in any event, subsequent to this decision the Court of Appeals refused to grant an independent line to a candidate already nominated by two accredited political parties, where it appeared that such candidate had signatures amounting to but 1.6% of the voting population (*Matter of Lazer* v. *McNab*, 19 A D 2d 830, affd. 13 N Y 2d 935). It is to be noted that in the present case the independent petition bears signatures of approximately 1.9% of the voting electorate. Accordingly, it would seem that it would come within the most recent holding of the Court of Appeals above referred to.

We should not deviate further from the law as enacted by the Legislature. As Judge FULD said in his dissenting opinion in the *Matter of Belford* (*supra*, p. 73): " To hold — as the court

is now holding — that respondent is entitled to have his name appear in a separate row for the independent body goes far toward nullifying section 248 of the Election Law." And indeed it would. If the decision in *Matter of Belford* would go "far toward nullifying section 248" then the holding of the majority here would complete the process and effectuate nullification.

I might observe that the cause of independent nominations is not being served by giving an extra place on the ballot to one who already has two regular party nominations. To do so would make it possible for the regular political parties, by the device of creating "independent" bodies, to usurp nearly all the lines of the voting machine thereby crowding truly independent bodies into one line. The possibility of such distorted use of independent petitions demonstrates the wisdom of the Legislature in enacting the relevant portion of section 248 of the Election Law.

While I am of the opinion that the statute precludes the granting of a third line I am also of the opinion that a literal application of the statute does not offend the equities. Is it inequitable to refuse to give a third line to a candidate who already has two places on the machine? How many lines does this candidate need? None of the other candidates have in excess of two lines. Further, the statement that over three million pieces of literature associating this candidate with Line E has already been mailed is of no relevance. Such activity in no way resulted from any laches on the part of those who attack the decision to give him an extra line. Immediately upon the Board of Elections having indicated that such extra line would be given there was a protest filed, and since that time there has been no delay in proceeding to review such decision. Thus the mailing of that literature cannot serve as a basis upon which to estop the petitioner from asserting a clear statutory right. The candidate must bear the consequences of his reliance upon a decision that was still under attack and in the process of being reviewed. In any event and as a practical matter I cannot believe that the electorate is so ignorant or so lacking in intelligence as to vote Row E blindly merely on the basis of that mailing. There will be no prejudice by confining this candidate to two lines on the machine. Those who wish to vote for him will not have to look too hard to find him. However, in view of the statement that the Independent Citizens party had mailed three million circulars and to avoid any possibility that the one who we must realistically recognize as being his most serious rival may receive the benefit of such mailing — although I do not think that there would be any benefit obtained — I would not place the

Civil Service Fusion party on Row E but, in the exercise of allowable discretion would place it in Row G.

Accordingly, I would modify the order to the extent of directing that the Civil Service Fusion party be placed on Line G and that those parties which are now assigned to Line G be placed in Line E, and as so modified I would affirm.

McNally, Stevens, Steuer and Staley, JJ., concur in *Per Curiam* opinion; Rabin, J. P., dissents in part and votes to modify by placing the Civil Service Fusion party on Line G and those now listed on Line G to be placed on Line E.

Judgment modified, on the law, on the facts and in exercise of discretion, so as to set up eight lines. Line E remains for the Independent Citizens party. Line F is assigned to the United Tax Payers party. Line G is assigned to the Civil Service Fusion party. Line H is assigned to the other remaining independent bodies. The judgment is otherwise affirmed, without costs or disbursements to either party.