In the Matter of the Application of WILLIAM P. BURR, Appellant, against JOHN R. VOORHIS et al., as Custodians of Primary Records and as Commissioners of Election of the City of New York, Respondents.

Elections — commissioners, or boards, of election act in ministerial capacity only in preparing ballots for election with duties prescribed by the Election Law — justices of the Supreme Court — mandamus — when candidate for justice of Supreme Court cannot compel commissioners of election to provide ballots in which each candidate is in a section, or class, by himself.

1. Neither the provisions of the State Constitution establishing the Supreme Court and prescribing the terms and duties of the justices

of the court and providing generally when and how such justices and their successors shall be chosen in each judicial district, nor the statutes enacted in pursuance of the Constitution constitute or declare each office held by a justice of the Supreme Court independent and separate so that each justice is the incumbent of the office of justice of the Supreme Court single to him.

2. The legislature acting under the power conferred by the Constitution has prescribed (Election Law; Cons. Laws, ch. 17) that at primary and general elections the names of all candidates for any office shall be placed in one section under a title showing for what office they are candidates, each name preceded by the proper party emblem and the voting square, and the commissioners of election of the city of New York, having no discretion but acting in a purely ministerial capacity (Election Law, §§ 58, 331), must prepare and issue ballots for the coming primary and general elections as directed by the statute; hence, a prospective candidate for justice of the Supreme Court, one of nine justices to be elected in and for the first judicial district, who will be a candidate to fill a vacancy caused by the death of a certain justice, is not entitled to a mandamus directing the commissioners of election to receive designations and nominations for the offices of justices of the Supreme Court, each as a separate office, and to print the ballots so that candidates for each such separate office shall be contained in a separate section, a section for each separate office to be filled.

*Matter of Burr* v. *Voorhis,* 192 App. Div. 909, affirmed.

(Argued June 10, 1920; decided July 7, 1920.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 28, 1920, which affirmed, as a matter of law and not in the exercise of discretion, an order of Special Term denying a motion for a premptory writ of mandamus.

The facts, so far as material, are stated in the opinion.

*John Godfrey Saxe, George W. Olvany, Edwin D. Worcester* and *John Ingle, Jr.,* for appellant. The Constitution expressly requires succession in the office of justice of the Supreme Court. (Const. of 1846, art. 6, §§ 4, 13; Const. of 1867, art. 6, §§ 6, 9.) The Election Law expressly requires a separate section for each office.

(Cons. Laws, ch. 17, § 58; *Mussen* v. *Ausable Granite Works*, 63 Hun, 367; *Matter of Rupp*, 28 Misc. Rep. 703; *People* v. *Cowles*, 13 N. Y. 350; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *People ex rel. Angerstein* v. *Kenney*, 97 N. Y. 294; *Rathbone* v. *Wirth*, 150 N. Y. 459; *People ex rel. Hart* v. *Goodrich*, 180 N. Y. 522; *State* v. *Constantine*, 42 Ohio St. 437; *People ex rel. Murphy* v. *Prendergast*, 165 App. Div. 186; 214 N. Y. 664.) The voter has the right to vote against a particular candidate. (*Matter of Hopper* v. *Britt*, 203 N. Y. 144.) The statute is unconstitutional as arbitrary, capricious and illegal. (*Matter of Hopper* v. *Britt*, 203 N. Y. 144; Wigm. on Ev. § 2577; 16 Cyc. 869, 870, 901; *Adams* v. *Elwood*, 176 N. Y. 106; *Matter of Viemenstein*, 179 N. Y. 235; *People* v. *Van Gaasbeck*, 189 N. Y. 408; *Matter of Fraser* v. *Brown*, 203 N. Y. 136; *People ex rel. Stapleton* v. *Bell*, 119 N. Y. 175; *People ex rel. Goring* v. *President*, 144 N. Y. 616; *Matter of Callahan*, 200 N. Y. 59; *People ex rel. Hotchkiss* v. *Smith*, 206 N. Y. 231.)

*Meier Steinbrink, amicus curiæ.* Section 293 of the Election Law requires not only the separation of the offices on the ballot, but a distinct designation of each of them. (*Matter of Duell* v. *Bd. of Elections*, 205 N. Y. 79.) There is no provision of the Election Law which will allow the simultaneous candidacy of one man for several offices. (*Matter of Vass* v. *Britt*, 209 N. Y. 557.)

*John P. O'Brien, Corporation Counsel* (*Russell Lord Tarbox, George P. Nicholson* and *John F. O'Brien* of counsel), for respondents. The board properly refused to comply with appellant's demand. (Cons. Laws, ch. 17, § 331, subd. 3; *Matter of Walsh* v. *Boyle*, 179 App. Div. 582.)

*A. S. Gilbert* for the Republican party of the county of New York, intervener. The board of elections has no power to print the ballot except as required by statute. (Cons. Laws, ch. 17, § 331, subd. 3.) The word " office " in the sense in which it is used in the Election Law con-

templates the office of justice of the Supreme Court consisting of a number of individual officers. (*State* v. *Kilchli,* 53 Minn. 147; *Matter of Walsh* v. *Boyle,* 179 App. Div. 582.) The requirement of the Election Law as to the method of election of more than one candidate for the same office is fair both to the voter and to the candidate. (*Matter of Hopper* v. *Britt,* 203 N. Y. 144.)

*Albert S. Bard, Leonard M. Wallstein* and *Clarence M. Lewis* for the Citizens Union of New York, intervener. Under all Constitutions and all forms of ballots, going back indefinitely, the voter has been free heretofore to select from the entire field of judicial candidates without restriction. (*Matter of Hopper* v. *Britt,* 203 N. Y. 144.) If the question be deemed to turn upon the meaning of the Constitution, we have the strong precedent of a legislative interpretation of the Constitution contrary to the claim of these applicants. If it be deemed to turn upon the legislative intent as declared in the Election Law, there exists a legislative declaration which must be held to be final and conclusive against these applicants. (*Matter of Callahan,* 200 N. Y. 59; *Matter of Hopper* v. *Britt,* 203 N. Y. 144; *People ex rel. Hotchkiss* v. *Smith,* 206 N. Y. 231; *Matter of Walsh* v. *Boyle,* 179 App. Div. 582.)

COLLIN, J. The appellant, William P. Burr, by his petition, sought the issuance of the writ of peremptory mandamus directing the respondents at the coming primary and general elections in 1920 " to receive designations and nominations for the offices of Justices of the Supreme Court, each as a separate office, and to print the primary and general elections ballots, so that the candidates for each such separate office shall be contained in a separate section and so that only one office may be voted for under any title, and providing that upon the ballot

25

there shall appear as many consecutive sections as there are separate offices to be filled, * * *." The denial of the application by the Special Term was affirmed and leave to appeal to this court given by the Appellate Division.

The facts are: The applicant is a justice of the Supreme Court of and for the first judicial district, in virtue of an appointment made March 29, 1920, to fill the vacancy caused by the death of Justice Eugene A. Philbin. He intends to be a candidate at the next primary election and a nominee at the next general election for such office. Two other justices of the Supreme Court of the district are similarly situated. Through those elections nine men are to be elected justices of the Supreme Court in and for the first judicial district for the full and same term. The counties of New York and Bronx, within the city of New York, constitute the first judicial district. The respondents are the custodians of primary records for the city of New York and are charged with the duties of preparing, having printed and furnishing the ballots for the elections. Between them and the appellant a dispute has arisen as to the manner in which the names of the candidates for nomination at the primary elections and the names of the nominees as justices of the Supreme Court for the first judicial district shall be placed upon the ballots. The respondents have resolved to place, adhering to their practice, in one section the names of the candidates and nominees. Thereby at the primary election the section would be titled " Justices of the Supreme Court for the First Judicial District. Vote for nine," and immediately underneath in a column would be placed, separated by lines, the names of those designated as candidates; and at the general election the section would be so titled and immediately underneath in a column would be placed, separated by lines, the names of those nominated, each name preceded by the proper party emblem and the voting square. The appellant demands

that there be in the ballots as many sections as there are to be nominees, each section to be titled " Justice of the Supreme Court to succeed (inserting here the name of a justice whose term is about to expire). Vote for one." Thereby at the primary election each of the nine sections would be thus titled and immediately underneath in a column would be placed, separated by lines, the names of those designated by the nominating petitions as candidates to succeed the justice named in the title; and at the general election each section would be so titled and immediately underneath in a column would be placed, separated by lines, the names of those nominated at the primary election to succeed the justice named in the title, each name preceded by the proper party emblem and the voting square.

The respondents act, in the matter under review, in a purely ministerial capacity. Their duties therein are defined and expressed by the statutes. (Election Law [Cons. Laws, chapter 17], sections 58, 331.) The intent of the legislature, to be ascertained from those sections, is clearly to the effect that it was not the legislative purpose to invest the custodians of primary records with any discretion as to the form of the ballots or designation of the offices. They have not authority to create or destroy offices. It is established law that it is not the office of a writ of mandamus either to confer powers or to impose duties. The writ issues to compel the performance of official duty clearly imposed by law, where there is no other adequate specific remedy. The duty must be positive, not discretionary, and the right to its performance must be so clear as not to admit of reasonable doubt or controversy. It is not enough that the act, performance of which is sought, is not prohibited; its performance must be directed.

The appellant bases his demand, chiefly, upon the assertions, supported by earnest and exhaustive argument, that each justice of the Supreme Court, under and for

the purposes of the Election Law, is the incumbent of an independent and particular office — an office unshared by any other justice of the Supreme Court; that there are as many offices of " Justice of the Supreme Court " in and for the first judicial district as there are justices of the Supreme Court in the district and that the office of each justice must be perpetuated by the election of a candidate and nominee specially designated, nominated and elected to take the place or enter into the office of a specially designated or named justice whose term is about to expire. The appellant states that he was appointed to fill the vacancy in the office of which Justice Philbin was the incumbent, which office he now holds; that he intends to be and has the clear legal right to be voted for as a candidate for the specific office of " Justice of the Supreme Court to succeed William P. Burr " and to be opposed only by those who are designated and nominated as candidates and nominees for that particular and specified office.

The right to vote for or the right to be voted for as a candidate for a public office is defined and regulated by the Constitution and legislative enactments of the state. In so far as the Constitution does not particularly designate the methods in which the right shall be exercised the legislature is free to adopt concerning it any reasonable, uniform and just regulations which are in harmony with constitutional provisions. The regulation of elections, the description of the ballots, the prescription of the conditions upon which and the manner in which the names of candidates or nominees may appear upon the official ballots, the method of voting and all cognate matters are legislative and not justiciable unless the Constitution is violated. We are to determine from the Constitution and relevant statutes whether or not there is the one office of justice of the Supreme Court, shared in by all the justices who constitute the Supreme Court. To assume that each justice is an incumbent of an independent and particular

office and thereupon apply the enactments is a begging of the question. The Constitution enacts: " The Supreme Court shall consist of the justices now in office, and " of those who in virtue of the constitutional provisions become justices. " The successors of said justices shall be chosen by the electors of their respective judicial districts." (Constitution, article 6, section 1.) " The official terms of the Justices of the Supreme Court shall be fourteen years from and including the first day of January next after their election. When a vacancy shall occur otherwise than by expiration of term in the office of Justice of the Supreme Court the same shall be filled for a full term, at the next general election, happening not less than three months after such vacancy occurs; and, until the vacancy shall be so filled, the Governor by and with the advice and consent of the Senate, if the Senate shall be in session, or if not in session the Governor, may fill such vacancy by appointment, which shall continue until and including the last day of December next after the election at which the vacancy shall be filled." (Constitution, article 6, section 4.) The clause " When a vacancy shall occur otherwise than by expiration of term in the office of Justice of the Supreme Court * * *," seems to express the intendment that the office of justice of the Supreme Court is single — is " the office of " not " an office of "— having many incumbents. Assuredly, at least, the term " the office " does not reasonably imply that it can be possessed at any given time by one person or one officer only, that one person or officer fills it completely. The duties of the nine justices to be elected are identical. The methods of performing them are the same. In them or their performance nothing differentiates any justice from each of the others. The justices have the same term, the same duties, the same responsibilities, the same compensation. The position of each, in virtue of law, assigns to the incumbent the continuous performance of the same permanent public duties as does the position of each of

the others. The positions, in sound reason and definition, may properly and legally be held to constitute in the aggregate the one office of justice of the Supreme Court, in which the justices share in complete equality. It is not incorrect, however, to say that each justice holds the office of justice of the Supreme Court. One of the various and varying meanings of the word " office " is: "A place in a governmental system created or recognized by the law of the State, which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties." (*People* v. *Coffin*, 282 Ill. 599, 606.) While the place of each justice is of such a character, it is only a part of the office titled " Justice of the Supreme Court," and having many incumbents. A share in an office may become vacant as well and truly as may an unshared office. The declaration of the Constitution that the successors of said justices shall be chosen by the electors of their respective judicial districts is not necessarily hostile to such conclusion. As a matter of course the Supreme Court and the office of justice of the Supreme Court must be perpetuated by the justices who shall succeed those who were the justices in virtue of and at and subsequent to the adoption of the Constitution. Many incumbents of one office may have successors as naturally and truly as may one incumbent of one office. The intent and purpose of the declaration were not to enact the fact that those justices should have successors — that was assumed — and were to enact that the successors shall be chosen by the electors of their respective judicial districts. It does not intend or purport to prescribe the method or manner by which they shall be so selected. It left to the legislature, within the terms of the Constitution, the adoption of such reasonable regulations and restrictions as to nominations and elections as might be deemed necessary to secure and facilitate an efficient, honest and patriotic exercise of the elective franchise. The Constitution does not recognize a par-

titioned or divided office of justice of the Supreme Court. It has not by the legislature, a court, or an official, so far as I can ascertain, been interpreted as so doing. It is not asserted by the appellant that Mr. Philbin, whose death while in the office created the vacancy which was terminated by the appointment of the appellant, was by the petition of nomination, the primary ballot and nomination or the general election ballot denominated " as the successor of " or " to succeed " a specified justice of two or more whose terms were about to expire. The office held by the appellant has not been invested with a new character and quality during his incumbency. There cannot be discerned in the Constitution a reason compelling or justifying the conclusion that the interpretation, universally given through many years to the constitutional provisions was ill-founded and erroneous and that a writ of mandamus should compel it to give way to that urged by the appellant.

Turning to the statutory provisions it is found they are equally devoid of enactment that each justice is the incumbent of the office of justice of the Supreme Court, single to him. The source of the nomination and election of a justice is, of course, the petition for the designation of a candidate for nomination and the primary election, or an independent certificate of nomination. (Election Law [Cons. Laws, chapter 17], sections 46, 122.) The statutory provisions prescribing the methods in which candidates secure places upon the primary ballot do not declare or hint that, under the conditions here or analogous conditions, the petition or certificate must or may lawfully state that the candidate for a public office is such " as the successor of " or " to succeed " one of several incumbents of the office whose terms are expiring. The designating petition must declare the name of the candidate, the public office for which he is designated and his place of residence. " For the office of justice of the supreme court " the signatures need not exceed fifteen hundred

(Section 48.)    The independent certificates of nomination shall contain the titles of the offices to be filled, the name and residence of each candidate nominated and other designations immaterial here.  " No certificate shall contain the names of more candidates for any office than there are persons to be elected to such office."    (Section 123, subd. 5.)

The statutory directions, more or less relevant, concerning the official primary ballots which alone are used at official primary elections are: " The face of the ballot below the perforated line shall be divided into two parts by a heavy black vertical line, one-fourth of an inch in width.  Immediately below the perforated line in the center of the space at the left of said vertical line shall be printed the caption ' Candidates for nomination for public office.'    Under said caption the names of candidates for nomination for public office shall be printed under the titles of the respective offices for which they are candidates respectively,  * * *, so that the names of all candidates for nomination for an office shall be printed under the title of said office, and so that the said offices shall appear in the same consecutive order in which they appear upon the official ballot for the general election. Immediately below the title of each public office shall be printed in brevier lower case type a direction to the voters as to the number of persons to be voted for, in the following words: ' Vote for........' (the blank space being filled with the number of persons to be nominated for said office at the official primary election).   Immediately below this division and separated therefrom by a horizontal line shall be printed the name or names of candidates duly designated for such office.   The order in which the names of candidates shall appear under the title of an office shall be determined by the board or officer with whom designations are filed by lot in the presence of the candidates or their representatives, if present, and other persons required to be notified.    * * *

Immediately below the names of all the candidates in the case of each public office there shall be left a blank space or blank spaces equal in number to the number of candidates to be nominated for said office. The voter at the official primary election may write in such blank space or spaces the name of any person or persons for whom he desires to vote whose name or names are not printed upon the ballot. Voting spaces shall be provided at the left of each column opposite the names of candidates in the same manner as provided for on the official ballot for the general election. * * *." (Section 58.)

The statutory directions, more or less relevant, concerning the official ballots for general officers to be used at the general election are: " Ballots for general officers shall contain the names of all candidates except presidential electors. * * * Each ballot shall be printed in sections, on which the candidates' names, emblems and political designations, * * *, shall be boxed in by heavy black lines in the manner indicated in the illustration of the ballot hereinafter provided. * * * The names of all candidates for any one office shall be printed in a separate section, and the sections shall be in the customary order of the offices * * *. The names of candidates shall be printed in their appropriate section in such order as the board of elections may direct, precedence, however, being given, except as herein otherwise provided, to the candidate of the party which polled the highest number of votes for governor at the last preceding election for such officer, and so on. At the top of each section in the center shall be printed on one line the title of the office. On the same line, to the left of such title and immediately above the emblems and voting squares, there shall be printed a direction as to the number of candidates for whom a vote may be cast, which direction shall be punctuated by an exclamation point. If two or more candidates are nominated for the same office for different terms, the term for which each is nominated

shall be printed as a part of the title of the office. At the bottom of each section as many separate spaces as there are candidates to be elected shall be left blank in which the voter may write the names of any candidates not on the ballot. * * * " (Section 331.)

The conclusion, reached by us, that the statutory provisions do not constitute or declare each office held by a justice of the Supreme Court independent and separate, needs not discussion in its support. Manifestly they support the conclusion. We deem useless any statement concerning them other than a reference to the clause: " If two or more candidates are nominated for the same office for different terms, the term for which each is nominated shall be printed as part of the title." Of a clause of identical effect the Supreme Court of California said: "And this is not only a most reasonable, but a most necessary provision of the law. In all of those cases where the title to the office is one, and the officers and incumbents of the office many, as boards of supervisors, city councils, commissioners, judges of the Superior Court, justices of the Courts of Appeal and of the Supreme Court, it would be impossible in any election, where more than one was to be voted for, and the terms were different periods, to determine the express will of the voters without such provision." (*Wilson* v. *Blake*, 169 Cal. 449.)

The appellant urges that the resolution and method adopted by the respondents is unconstitutional because it (a) prevents the elector from freely casting his ballot for the officers of his choice and limits him in voting against a candidate he deems unfit, and (b) is unreasonable, arbitrary and capricious. He does not cite or point out to us the specific enactments of the Constitution infracted. He cites decisions of this court to the effect that the legislature or a public officer cannot by enactment or rules of procedure disfranchise constitutionally qualified electors, and any system of election that unnecessarily prevents

the elector from voting or from voting for the candidate of his choice violates the Constitution. (*Matter of Hopper v. Britt,* 203 N. Y. 144; *People ex rel. Goring v. President, etc., of Wappinger Falls,* 144 N. Y. 616; *Matter of Callahan,* 200 N. Y. 59, 63; *People ex rel. Hotchkiss v. Smith,* 206 N. Y. 231.) Those decisions are based generally upon the constitutional enactments that no member of this state shall be disfranchised unless by the law of the land, or the judgment of his peers (Constitution, article 1, section 1), and that every citizen possessing the prescribed qualifications shall be entitled to vote at the elections. (Constitution, article 2, sections 1–5.) The sole enactment concerning the ballot or method of voting is: " All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved." The restriction upon the exercise of legislative wisdom and provision in the matter of elections could scarcely be less stringent. To justify the issuance of the writ the appellant must establish a clear repugnancy between the resolution of the respondents and the organic law of the state. · Certain arguments of counsel in support of the claims of appellant as stated reach distinctly into the realm of facts and beyond our jurisdiction. Certain arguments consist in pointing out the comparative fairness or unfairness or convenience or inconvenience to the voter, and advantage or disadvantage to the candidates between the two methods. All the briefs and arguments have had our consideration and do not disclose to us any fact or reason in virtue of which the method of the respondents, as a matter of law, approximates unconstitutionality. It is axiomatic that there must be limitations and systematization in the exercise of the elective franchise in order that it may be practicable, efficient, intelligent and honest. Legislative regulations which are reasonable and effect equality, as far as may in

practical working be, cannot be rightfully said to contravene any constitutional right. The courts cannot condemn restrictions for a legitimate purpose and reasonably adapted to effect the purpose. The method of the respondents stands those tests. The wit of man cannot devise a method transcending all inequality and discrimination. Doubtless the method advocated by the appellant and which he deems the more reasonable might have been legally adopted. Counsel have, however, urged, and we have discovered, criticisms of its discrimination and unequal working quite as cogent as those declared by the appellant in his behalf. The method of the respondents does not unreasonably impair the rights of the appellant or the other candidates for the office of justice of the Supreme Court, or of the electors, and is not beyond the constitutional power of the legislature.

The order should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN and ANDREWS, JJ., concur; ELKUS, J., not sitting.

Order affirmed.