Ftjld, J.
In this case, involving the constitutionality of the recently adopted New York City Charter provision relating to the election of councilmen at large, Johnson v. City of New York (274 N. Y. 411) —which dealt with an earlier provision of a somewhat similar character — is dispositive of the issue presented.
At the general election held in November of 1961, the following two questions were submitted to the voters of the City of New York:
*139 “ Shall the proposed new city charter recommended by the City Charter Revision Commission be adopted? ”
“ Shall the system of limited voting for the election of Councilmen-at-large, provided for in the Charter proposed by the Charter Revision Commission of the City of New York, be adopted? ”
Both questions were answered in the affirmative by a majority of the votes cast, and the Charter as thus approved contained the provision here under review — presently numbered section 22 — which provides, in sum, that the City Council shall consist of a member to be elected from each senate district in the city and 10 additional councilmen at large to be elected borough-wide, two from each of the five boroughs. In prescribing the method of election of such councilmen at large, the Charter limits each voter to vote for a single borough-wide candidate, also providing that a party (or independent body) may nominate only one candidate for councilmen at large in each borough. There may, of course, be three or four or more candidates on the ballot for that office. This system of voting, known popularly as “ limited voting ”, was recommended after lengthy and thoughtful study by two successive commissions in order to make possible the election of minority representatives.[1]
The principal challenge to the constitutionality of section 22 is that, by providing that a voter may vote for only one of the two candidates for the offices of councilmen at large from his borough, it deprives him of a right to vote for a candidate of his choice for both of the elective offices to be filled and thereby offends against section 1 of article II of our State Constitution. Entitled “ Qualifications of voters ”, that section reads in part in this way:
‘ ‘ Every citizen of the age of twenty-one years, who shall have been a citizen for ninety days, and an inhabitant of this state for one year next preceding an elec *140 tion, and for the last four months a resident of the county, city, or village and for the last thirty days a resident of the election district in which he or she may offer his or her vote, shall be entitled to vote at such election in the election district of which he or she shall at the time be a resident, and not elsewhere, for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to the vote of the people.”
As indicated above, this court’s decision and reasoning in the Johnson case (274 N. Y. 411, supra), in which proportional representation, a different form of limited voting, was upheld as constitutional, are decisive of the present appeal. Confronted with the very arguments now advanced to support the petitioner’s contention that section 22 is unconstitutional, the court rejected them, concluding that proportional representation was not proscribed by any constitutional provision.
In Johnson, as here, it was urged that article II, section 1, of the Constitution was to be taken literally and that, as so read, it commanded that each voter was to have the unrestricted right to vote for each office to be filled. Although this view gained the adherence of Judge Rippey (274 N. Y., at pp. 439-440), the majority decided otherwise, expressly holding that the purpose of the constitutional provision was solely to remove the disqualifications which attached to the person of the voter in earlier times and thereby assure to a citizen, qualified by age and residence, the same right to vote as every other similarly qualified voter possessed. In other words, section 1 of article II was designed not to regulate the mode of selection of elective officers but rather to regulate the status of voters and to protect ■ otherwise qualified voters from electoral discrimination. As the court put it (274 N. Y., at pp. 418-419):
“ No one can read the history of these changes in the early Constitution without realizing that the object of the change in the law made by these two Constitutions was to remove the disqualifications which attached to the person of the voter. Poverty was no longer to disqualify any male citizen over twenty-one years of *141 age who had resided a sufficient length of time within the State and territory where he voted. The special class of electorate was abolished and all were treated on an equality. * * * * The obvious purpose of the article [art. II, § 1] was to prescribe the general qualifications that voters throughout the State were required to possess to authorize them to vote for public officers or upon public questions relating to general governmental affairs.’ [Spitzer v. Village of Fulton, 172 N. Y. 285, 289.] ” (See, also, 11 N. Y. S. Const. Convention Committee [1938], pp. 139-171.)
Moreover, in distinguishing Matter of Hopper v. Britt (203 N. Y. 144), the court observed that, whereas the provisions there considered related to u a limitation placed upon one voter which did not apply to another voter in the same district ”, the proportional voting provision then before it “ treats all electors alike ” and, accordingly, did not violate the Constitution (274 N. Y., at p. 423). And, in concurring with the majority, Judge Lehman, after noting that section 1 of article II ‘ ‘ was drafted ” to remove the , disqualifications which attached to the person of a voter and not to assure an elector the right to vote for each and every office to be filled, concluded by stating that the proportional representation system “ does not violate the spirit of any of the great basic principles which are intended to be protected by the Constitution” (274 N. Y., at p. 433). “ Though I share Judge Rippey’s misgivings about the possible result of the innovation,” he said, “ such misgivings may not blind me to the fact that the innovation does not violate the spirit of any of the great basic principles which are intended to be protected by the Constitution and that it is possible to construe the letter of the Constitution in manner which will confine its letter to the purposes which it is clear that the letter was intended to cover.”
As is apparent from the foregoing, the question before us is a very narrow one: Does the system of limited voting prescribed in section 22 so materially differ from the system of proportional voting upheld in the Johnson case as to bring it in conflict with article II, section 1?
*142 The justice at Special Term thought it did; he believed that there was a difference of substance between the limited voting-provisions of section 22 and those provisions relating to proportional representation in that, to cull from his opinion, under the former 11 each elector can vote to fill only one of two vacancies * * * [being] thereby precluded from voting for every office to be filled ”, while under proportional representation “ every voter was afforded the opportunity to make a selection of a nominee for every vacancy to be filled within the political subdivision”. The purported distinction does not exist. A reading of old chapter 43 of the Charter — which provided the method of election of eouncilmen by proportional representation — demonstrates that under both the sanctioned proportional representation method and the limited voting system of section 22, the elector had a single “ vote ” regardless of the number of offices to be filled. As provided in former chapter 43, the voter expressed his preferences or choices on his ballot by placing the number “ 1 ” in the square opposite the name of the candidate of his first choice, number “2” opposite his second choice and so on down the list (§ 1005). The instructions to voters contained in the statute recited, ‘ ‘ You may mark as many choices as you please ” (§ 1005) but, in providing for the counting of the ballots, the applicable section of the Charter made it plain that the several alternative choices were not votes. Thus, section 1007 explicitly limited each voter to a “ single ’ ’ vote, a “ Single transferable vote ” (see Johnson v. City of New York, 274 N. Y. 411, 427-429), and, indeed, in his opinion for the court, the Chief Judge remarked that (p. 424)
‘[1] The main argument against the constitutionality of this chapter has been that the proportional voting system permits the voter to select but one of the Councilmen [out of the many to be elected] from his borough ”.
Judge Lehmah likewise made it clear that it was “ a system by which the votes of each voter may be counted for only one candidate though more than one officer is to be chosen at the election ” (274 N. Y., at p. 433). In point of fact, it was precisely because the vote was so limited that Judge Rippey concluded, as the lone dissenter, that chapter 43’s proportional *143 representation system was unconstitutional (274 N. Y., at pp.438-440).[2]
The majority opinion in Johnson reminds us that limited voting systems almost identical in substance with the system now under review were in effect in New York City for many years during the 19th century in connection with the election of supervisors and aldermen, the predecessors of councilmen. As the court noted, “ limited or proportional voting was carried on in the city of New York * # * for a continuous period of thirty years from 1857 to 1887 ” (274 N. Y., at p. 422) and, the court added (p. 423), despite the fact that during those years 1‘ the press and the bar included men of marked ability and energy, with a willingness and courage to attack any fundamental principle of municipal government which was wrong ”, it was never declared unconstitutional.[3]
In the context of the constitutional provision (art. II, § 1), limited voting and proportional representation are in substance and effect identical. Limited voting is much less complex and will probably have different consequences but each system necessarily involves a limitation of voting, imposed on all voters *144 alike, in order to make possible of achievement some minority representation in a multiple body. Consequently, based on our decision in the Johnson case, it is clear that section 22 of the Charter does not offend against our Constitution.* **[4]
Nor is there any basis for the petitioner’s further contention that it violates the Fourteenth Amendment of the Federal Constitution. In our view, nothing said in Gray v. Sanders (372 U. S. 368), and certainly nothing there decided, has any bearing on the case before us.
The repeated efforts of New York City, extending over the last century, to provide some form of minority representation in the machinery of local government is evidence of the widespread feeling that such representation can play an important role in a democracy. Indeed, in the Johnson case, the court characterized it as “ an attempt to make representative government a reality ” (274 N. Y., at p. 430). Be that as it may, New York’s latest experiment in limited voting, approved by its inhabitants, is one which the Constitution permits it to make.
The order appealed from should be affirmed, without costs.

. These two commissions were the New York State Commission on Governmental Operations of the City of New York headed by Honorable Frank C. Moore as chairman (see Draft of Proposed Charter for the City of New York, dated Feb. 20, 1961) and the Charter Revision Commission of the City of New York under the chairmanship of Honorable John T. Cahill (see Proposed Charter for the City of New York, filed Aug. 4, 1961).

. This is what Judge Rippey wrote (274 N. Y., at pp. 438-440): “No matter how many offices of Councilmen have thus been created, no elector is permitted to have his vote counted for more than one candidate and that one candidate is the one on whom the counting personnel determines his choice shall fall. * * * The practical result of its operation is * * * the disenfranchisement of duly qualified voters by exclusion of their right to vote and to have these votes counted for candidates of their choice for all offices to be filled or voted on in these several units of representation. * * * There is no provision of law in this State and cannot be any such which bars a duly qualified voter from casting his ballot for his candidate for every office for which voting is permissible within his election district. And yet this law says that he can vote for one Councilman and for one only although there may be, under the terms of the act, if he resides in Brooklyn, at least as many as twelve Councilmen to be elected, or if he resides in Manhattan at least as many as nine and all such offices available for his vote within the election district within which he resides. Under chapter 43, no matter how many offices of Councilmen may be created by the voters in any particular unit of representation, the ballot of the elector can be counted for only one candidate for one office. No matter how mmiy choices he may indicate on his ballot, his vote will count, if it counts at all, for only one choice.” (Emphasis supplied.)

. Although it may not be of operative significance, it is of some interest that an attempt was made in the Constitutional Convention of 1938 to over *144 ride the court’s decision in Johnson and to have the Constitution amended to reflect Judge Rippey’s dissenting view (see 4 Revised Record of Const. Convention of State of N. Y., pp. 3225-3240). The proposal was submitted to the voters and rejected by them (see McKinney’s Cons. Laws of N. Y., Book 2, Part I, Constitution, p. 178). Aimed at prohibiting “any system of proportional representation ”, the proposed amendment would have provided, in a new section 9, that “ Every voter shall be entitled to vote at each and every election in this State or any of its subdivisions for as many persons as there may be offices to be filled thereat.”

. In the view here expressed, it is unnecessary to consider whether the Home Rule Amendment (N. Y. Const., art. IX, §§ 9, 12) qualifies article II, section 1, with respect to local office.