Stefanik v Hochul (2024 NY Slip Op 02569)

Stefanik v Hochul

2024 NY Slip Op 02569

Decided on May 9, 2024

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

CV-24-0281

[*1]Elise Stefanik et al., Appellants,
v
Kathy Hochul, as Governor of the State of New York, et al., Respondents.

Calendar Date:April 29, 2024

Before: Garry, P.J., Egan Jr., Lynch, Ceresia and Mackey, JJ.

O'Connell and Aronowitz, Albany (Michael Y. Hawrylchak of counsel), for appellants.
Letitia James, Attorney General, Albany (Jeffrey W. Lang of counsel), for Kathy Hochul and another, respondents.
Cullen and Dykman LLP, Uniondale (Deborah N. Misir of counsel), for Peter S. Kosinski, respondent.
Brian L. Quail, Albany, for Douglas A. Kellner, respondent.
Elias Law Group LLP, Washington, DC (Aria C. Branch of counsel, admitted pro hac vice) and Dreyer Boyajian LLP, Albany (James R. Peluso of counsel), for DCCC and others, intervenors-respondents.
Hogan Lovells US LLP, New York City (Matthew C. Sullivan of counsel), for Common Cause New York, amicus curiae.
Friedman Kaplan Seiler Adelman & Robbins LLP, New York City (Lawrence Robbins of counsel), for Leadership Now Project, amicus curiae.

Lynch, J.
Appeal from a judgment of the Supreme Court (Christina L. Ryba, J.), entered February 5, 2024 in Albany County, which, among other things, declared that the New York Early Mail Voter Act is constitutional and granted certain defendants' motions to dismiss the complaint.
On this appeal, we are asked to determine the constitutionality of New York's recently enacted universal mail-in voting law. After considering the text and history of NY Constitution article II, we affirm Supreme Court's judgment declaring the law constitutional. Our analysis follows.
In 2023, the Legislature passed the New York Early Mail Voter Act (Election Law § 8-700 et seq. [hereinafter the Act]; see L 2023, ch 481, § 2), permitting all registered voters in New York to apply to "vote early by mail . . . in any election . . . in which the voter is eligible to vote" (Election Law § 8-700 [1]). To be considered for processing, an application to vote early by mail must be received by a local Board of Elections (hereinafter BOE) no later than 10 days before the election (see Election Law § 8-700 [2] [d]). Once received, the BOE confirms that the applicant is "a registered voter of the county or city at the address listed in the application and is eligible to vote in the election or elections for which the application is filed" (Election Law § 8-702 [1]). A ballot is then issued to the applicant, along with a postage-paid return envelope, which must be cast and counted by the BOE if received by the close of polls on election day or postmarked by that date and received no later than seven days thereafter (see Election Law §§ 8-704 [1], [2]; 8-710 [1]). The Act contains safeguards to protect against fraud, requiring the State BOE to maintain "an electronic early mail ballot tracking system" that records, among other information, whether it "received such voter's completed early mail ballot" and "counted or rejected" it (Election Law § 8-712 [1], [3] [e], [g]). Correspondingly, each local BOE is required to "maintain an early mail ballot tracking system integrated with the [S]tate [BOE's] system" (Election Law § 8-712 [1]). Concomitant with the Act's passage, the Legislature also amended Election Law § 9-209 to make the canvass procedures set forth in that section — which contain substantial protections to ensure election integrity — applicable to early mail ballots. The express purpose of the Act is to ensure "ease of participation" in elections and to "make New York State a leader in engaging the electorate, meeting voters where they are and opening up greater opportunities for people to have their choices made on the ballot" (Senate Introducer's Memo in Support of 2023 NY Senate-Assembly Bill S7394, A7632). It was signed into law on September 20, 2023 and became effective January 1, 2024.[FN1]

Prior to taking effect, plaintiffs — members of the US House of Representatives in four of New York's congressional districts, along with citizen voters, members of the New York Legislature, the [*2]New York Republican State Committee, the Conservative Party of New York, the National Republican Congressional Committee and others — commenced this declaratory judgment action challenging the Act as violative of the NY Constitution and seeking permanent injunctive relief prohibiting its enforcement in upcoming elections. Plaintiffs argue that the Act improperly expands the group of voters eligible to vote absentee under article II, § 2 and cannot be implemented without a constitutional amendment.[FN2]

Defendants Douglas A. Kellner and Andrew J. Spano — Commissioners of the State BOE — answered and asserted an affirmative defense that plaintiffs failed to state a cause of action. Defendant Peter S. Kosinski, another Commissioner and Co-Chair of the State BOE, answered separately and asked Supreme Court to grant the relief requested by plaintiffs. Defendants State of New York and Governor Kathy Hochul (hereinafter the State defendants) moved to dismiss the complaint for failure to state a cause of action, arguing that the Act is constitutional and the Legislature was authorized to pass a statute providing for universal mail-in voting under article II, § 7. The Democratic Congressional Campaign Committee, along with certain members of the US Congress and a group of voters, successfully intervened in the action and also moved to dismiss the complaint for failure to state a cause of action. Plaintiffs cross-moved for summary judgment on liability. Supreme Court granted the motions to dismiss and denied plaintiffs' cross-motion, declaring the Act "constitutional under the NY Constitution."[FN3] Prior to dismissing the complaint, Supreme Court denied plaintiffs' motion for a preliminary injunction. Plaintiffs appealed that decision and moved for a preliminary injunction pending appeal, which was denied by this Court on January 16, 2024 (2024 NY Slip Op 60916[U] [3d Dept 2024]). Plaintiffs concede that the appeal from the denial of their motion for a preliminary injunction is "now moot following Supreme Court's dismissal of the underlying action." Plaintiffs appeal.
On a motion to dismiss pursuant to CPLR 3211 (a) (7), courts afford the complaint a "liberal construction" and "accept the facts as alleged [therein] as true, accord [the] plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see Maddicks v Big City Props., LLC, 34 NY3d 116, 123 [2019]). "Upon such a motion, a court may reach the merits of a properly pleaded cause of action for a declaratory judgment where no questions of fact are presented by the controversy" (Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 124 [3d Dept 2022] [internal quotation marks and citations omitted]; see Hoffman v City of Syracuse, 2 NY2d 484, 487 [1957]). In that context, the court should treat the motion as one "for a declaration in the defendant's favor" (Sullivan [*3]v New York State Joint Commn. on Pub. Ethics, 207 AD3d at 124 [internal quotation marks and citations omitted]). We find that Supreme Court properly did so here.
Duly enacted statutes enjoy a "strong presumption of constitutionality" (White v Cuomo, 38 NY3d 209, 216 [2022] [internal quotation marks and citations omitted]; see Delgado v State of New York, 39 NY3d 242, 245 [2022]; Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013], cert denied 571 US 1071 [2013]). "To rebut that presumption, the party attempting to strike down a statute as facially unconstitutional bears the heavy burden of proving beyond a reasonable doubt that the statute is in conflict with the Constitution" (People v Viviani, 36 NY3d 564, 576 [2021] [internal quotation marks and citations omitted]; see White v Cuomo, 38 NY3d at 216; Matter of County of Chemung v Shah, 28 NY3d 244, 262 [2016]; LaValle v Hayden, 98 NY2d 155, 161 [2002]). Courts will strike down legislative enactments "only as a last unavoidable result[,] after every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible" (White v Cuomo, 38 NY3d at 216 [internal quotation marks and citations omitted]; accord Matter of Harkenrider v Hochul, 38 NY3d 494, 509 [2022]).
Our analysis of the Act necessarily begins with the plain language of the constitutional text (see Matter of Harkenrider v Hochul, 38 NY3d at 509). " 'In construing the language of the Constitution[,] as in construing the language of a statute, . . . [we] look for the intention of the People and give to the language used its ordinary meaning' " (id., quoting Matter of Sherrill v O'Brien, 188 NY 185, 207 [1907]; see White v Cuomo, 38 NY at 219-220). Article II of the NY Constitution governs the subject of voting. Article II, § 1 sets forth the "[q]ualifications of voters," providing that "[e]very citizen shall be entitled to vote at every election for all officers elected by the people and upon all questions submitted to the vote of the people provided that such citizen is [18] years of age or over and shall have been a resident of this state, and of the county, city, or village for [30] days next preceding an election." This provision establishes broad and universal voting rights for the state electorate, subject only to qualifications for residency, citizenship and age (see Matter of Blaikie v Power, 13 NY2d 134, 140 [1963], appeal dismissed 375 US 439 [1964]). In its current format, nothing in this section addresses — let alone restricts — the manner in which voting is to occur.
To that end, the Court of Appeals has long recognized that the NY Constitution grants the Legislature plenary power "to promulgate reasonable regulations for the conduct of elections" (Matter of Davis v Board of Elections of City of N.Y., 5 NY2d 66, 69 [1958]; see Matter of Burr v Voorhis, 229 NY 382, 388 [1920]; People ex rel. Hotchkiss v Smith, 206 NY 231[*4], 242 [1912]; People ex rel. Lardner v Carson, 155 NY 491, 502 [1898]). Such authority is codified in article II, § 7, titled "[m]anner of voting; identification of voters," which provides, in pertinent part, that "[a]ll elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved" (NY Const, art II, §7 [emphasis added]). The only limitations placed on the Legislature's authority in this regard are to ensure ballot secrecy and to refrain from exercising its authority in a manner that would "disfranchise constitutionally qualified electors" (Matter of Hopper v Britt, 203 NY 144, 150 [1911]).
Plaintiffs argue that an implied prohibition on universal mail-in voting is contained within the absentee ballot provisions of article II, § 2. This section states that "[t]he legislature may, by general law, provide a manner in which, and the time and place at which, qualified voters who, on the occurrence of any election, may be absent from the county of their residence . . . and qualified voters who, on the occurrence of any election, may be unable to appear personally at the polling place because of illness or physical disability, may vote and for the return and canvass of their votes" (NY Const, art II, § 2). Through the enactment of Election Law §§ 8-400 (2) (d) and 8-410, the Legislature has authorized voting by mail as a predominant method to cast an absentee ballot.[FN4]
In plaintiffs' view, universal mail-in voting is synonymous with no-excuse absentee voting and falls outside the categories for absentee voting authorized under article II, § 2. Plaintiffs maintain that, because the NY Constitution grants the Legislature authority to provide for absentee voting for only a defined group of individuals who meet specified criteria, a constitutional amendment is required to expand the group of individuals eligible to vote by this alternative method. Resolution of that contention necessarily calls for a review of the constitutional history underlying NY Constitution article II.
Beginning in 1846, article II, § 1 required eligible voters "to vote . . . in the election district of which [they] shall at the time be a resident, and not elsewhere" (1846 NY Const, art II, § 1 [emphasis added] [hereinafter the Election District Provision]). At all times since the NY Constitution was first amended during the Civil War to allow for absentee voting, and during each expansion of that power in article II, § 2 through 1963, the Election District Provision was generally understood as requiring in-person voting (see 2 Charles Z. Lincoln, The Constitutional History of New York at 237-238, 479-480 [1905]).[FN5] Plaintiffs do not dispute that the Election District Provision set a default requirement for in-person voting. As set forth in the historical record, in 1863, the Legislature proposed a bill to enable soldiers fighting [*5]for the Union to vote absentee. Then-New York Governor Horatio Seymour sent a "special message" to the Legislature expressing his view that a constitutional amendment was necessary to implement absentee voting. Relying on the Election District Provision then contained in article II, § 1, Governor Seymour wrote:
"It is clear to me that the Constitution intends that the right to vote shall only be exercised by the elector in person. It would be an insult and injury to the soldier to place the exercise of this right upon a doubtful or unconstitutional law, when it can be readily secured . . . by a constitutional amendment" (2 Lincoln, The Constitutional History of New York at 238 [emphasis added]).
A constitutional amendment to this effect was adopted in 1864 (see NY Const, art II, § 1, amended Mar. 8, 1864). Governor Seymour's view was also expressed by the Committee on Suffrage in 1867 when discussing a constitutional amendment to permit soldiers engaged in military service on behalf of the state — like their counterparts engaged in military service on behalf of the United States — to vote absentee when not present in their election district. The Committee explained:
"[t]he proposed amendment further protects the right of suffrage when the elector may be so engaged in the military service of the state, and when absent, on either service, not merely from the state, but from his own election district . . . . Their inability to cast their votes at the polls would be as absolute if they were thus serving within the state, as if they were beyond its bounds" (2 Lincoln, The Constitutional History of New York at 479-480 [emphasis omitted and added]).
We take note that, in 1898, when commenting on the Election District Provision, the Court of Appeals observed that "[w]e are told that the Constitution enacts that the elector must vote in the election district of which he shall at the time be a resident and not elsewhere. So it does" (People ex rel. Lardner v Carson, 155 NY at 496 [internal quotation marks omitted]). The Court continued, explaining that voters "must vote at the polls of the election district in which, at the time, [they] reside[ ], and not elsewhere" and that "[n]o vote can be registered, cast or counted in this state except at the polling place of some election district" (id. at 498 [emphasis added and omitted]). Consistent with this understanding, additional constitutional amendments were adopted during the first half of the 20th century further expanding absentee voting rights to permit additional groups of individuals to vote by alternative methods (see NY Const, art II, § 2 [formerly § 1-a], amended Nov. 8, 1938; Nov. 4, 1947; Nov. 8, 1955). The absentee ballot provisions of article II were amended again in 1963, resulting in the absentee voting categories currently contained in article II, § 2 (see NY Const, art II, § 2 [formerly § 1-a], amended Nov. 5, 1963).
In 1966, a constitutional amendment was passed that substantially streamlined [*6]and overhauled article II, § 1. The amendment reduced the residency period for voters to three months preceding the next election and, pertinent here, deleted the phrase requiring voting to take place "in the election district of which [the voter] shall at the time be a resident, and not elsewhere" — i.e., the Election District Provision (see NY Const, art II, § 1, amended Nov. 8, 1966; Senate Concurrent Resolution 5519, 1965 NY Laws 2783-2784). Although the specific rationale behind the excision of this text was not explained in the historical record underlying this amendment, which focused primarily on the residency requirements enumerated in this section (see Sponsor's Memorandum, 1966 NY Legis Ann at 130-131), the excision of the Election District Provision was hardly done in secret, as plaintiffs suggest. In 1965, the Senate and Assembly adopted Concurrent Resolution 5519, which proposed an amendment to article II, § 1 depicting the wholesale deletion of the language then contained in that provision, including the text stating that qualified voters "shall be entitled to vote . . . in the election district of which he [or she] shall at the time be a resident, and not elsewhere." In its place, the resolution proposed an entirely new, streamlined section 1, as follows: "Every citizen shall be entitled to vote at every election for all officers elected by the people and upon all questions submitted to the vote of the people provided that such citizen is [21] years of age or over and shall have been a resident of this state, and of the county, city, or village for three months next preceding an election" (Senate Concurrent Resolution 5519, 1965 NY Laws 2783-2784). Notably, the constitutional amendment adopted in 1966 was substantially the same as the one proposed in Concurrent Resolution 5519.[FN6] The residency requirement and age limitation were subsequently reduced to 30 days and 18 years, respectively (see NY Const, art II, § 1, amended Nov. 7, 1995). The amendment was also proposed at the same time that a larger effort was taking place to "[l]iberaliz[e] . . . laws pertaining to registration and voting to achieve an increase in voter participation" (Rep of Joint Legis Comm to Make a Study of the Election Law and Related Statutes, 1966 NY Legis Doc No. 30 at 11). In that regard, it is important to emphasize that article II, § 1 pertains to "[q]ualifications of voters" such that the amendment effectively removed in-person voting as a voter qualification, opening the door for alternative methods of voting. Only three years before the amendment, the Joint Legislative Commission to Make a Study of the Election Law and Related Statutes published a report expressing the view that the Election Law should be kept "in step with our ever-changing times . . . to facilitate the voting process to enable every voter to vote with the least possible inconvenience" and spoke about a proposal to "liberaliz[e] absentee balloting" (Rep of Joint Legis Comm to Make a Study [*7]of the Election Law and Related Statutes, 1963 NY Legis Doc No. 33 at 15, 12).
Considering this historical context, plaintiffs' reliance on the interpretive maxim expressio unius est exclusio alterius for the premise that article II, § 2 precludes the Legislature from authorizing universal mail-in voting by carving out the only categories of voters entitled to vote by absentee ballot — to the exclusion of others — may well have been plausible prior to the 1966 amendment to article II, § 1 (see Fossella v Adams, ___ AD3d ___, ___, 2024 NY Slip Op 00891, *8 [2d Dept 2024]; McKinney's Cons Laws of NY, Book 1, Statutes § 240 ["where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded"]; but see Barto v Himrod, 8 NY 483, 493 [1853, Willard, J.] ["The maxim (e)xpressio unius est exclusio alterius, is more applicable to deeds and contracts than to a constitution, and requires great caution in its application, in all cases"]). Moreover, when the in-person voting requirement of article II, § 1 was still in effect, it would not have been necessary for article II, § 2 to expressly require other voters to cast their ballots in person on election day. For this same reason, article II, § 7, which specifies that voting "shall be by ballot, or by such other method as may be prescribed by law," was not previously construed as authorizing absentee voting beyond the categories defined in article II, § 2.
And yet, it is essential to recognize that the Election District Provision previously contained in article II, § 1 is what necessitated the adoption of article II, § 2 in the first place and limited the scope of article II, § 7. That entire dynamic — involving the interplay between these sections — changed with the removal of the in-person voting requirement. With that operative language deleted from article II, § 1, there has been no express provision in the constitution mandating in-person voting since January 1, 1967. We note that, since the repeal of the Election District Provision, the Legislature has passed three statutes expanding absentee voting for certain BOE employees, domestic violence victims and emergency responders, all without resort to constitutional amendments (see Election Law §§ 11-302; 11-306; 11-308). We disagree with plaintiffs' implied contention — which is more fully expounded upon by Kosinski — that the language retained in article II, § 1 providing that qualified voters "shall be entitled to vote at every election" (emphasis added), creates an in-person voting requirement despite the excision of the Election District Provision. That assertion does not comport with the historical record outlined above. Considering the broad voting rights granted by this provision, we decline to interpret the word "at" so narrowly and instead conclude that this language merely envisages the right of a qualified [*8]elector to cast a vote in every election.
We are further unpersuaded by plaintiffs' claim that the authority granted to the Legislature under article II, § 7 to prescribe the "manner of voting" does not encompass early mail-in voting as a method by which votes may be cast. To the extent this section provides for voting "by ballot, or by such other method as may be prescribed by law" (emphasis added), plaintiffs maintain that "such other method" refers only to the mechanics of voting —specifically, the use of voting machines as compared to paper ballots. For that premise, plaintiffs cite the Court of Appeals' decision in People ex rel. Deister v Wintermute (194 NY 99 [1909]). Our reading of Wintermute is not so limited. In Wintermute, the Court of Appeals explained that the 1777, 1821 and 1846 versions of the NY Constitution each required votes to be recorded on paper ballots (see id. at 104). In 1895, however, a constitutional amendment was passed that expanded the manner in which voting could occur, resulting in the current constitutional language — then contained in a different section of article II — providing that voting be by ballot "or by such other method as may be prescribed by law, provided that secrecy in voting be preserved" (see id.). After tracking the evolution of this language, the Court explained that the purpose of the amendment "was not to create any greater safeguards for the secrecy of the ballot than had hitherto prevailed, but solely to enable the substitution of voting machines" for paper ballots (id. [emphasis added]). Seizing on the underscored language, written in an entirely different context over 100 years ago when voting machines were just being introduced, plaintiffs argue that the authority granted to the Legislature in article II, § 7 is "limited to [determining] the physical mechanics of [the] voting [process]." We disagree.
While article II, § 7 was amended to enable the use of voting machines, the amendment was not specific to voting machines, but utilized broad language to allow for "such other methods" (NY Const, art II, § 7; see 3 Lincoln, The Constitutional History of New York at 109-113 [revealing that a proposed amendment that would have stated: "All elections by the citizens shall be by ballot, or by the use of a voting apparatus, as prescribed by law," was not adopted by the Committee on Suffrage at the 1894 Constitutional Convention]). In that regard, we are mindful that a paper ballot is used to record a vote whether completed at the polling place or mailed in by the voter. The difference is one of process, which is embraced within the Legislature's authority to determine the manner and methods for expressing one's fundamental right to vote. Notably, in upholding Pennsylvania's universal mail-in voting law, the Pennsylvania Supreme Court rejected the same argument plaintiffs advance here and found that a nearly identical provision of the Pennsylvania Constitution providing that "[a]ll elections by the [*9]citizens shall be by ballot or by such other method as may be prescribed by law" (Pa Const, art VII, § 4) authorized the legislature to prescribe the manner in which a vote is to be cast, including by mail (see McLinko v Department of State, 279 A3d 539, 577-580 [Pa 2022], cert denied ___ US ___, 143 S Ct 573 [2023]). The text and history of NY Constitution article II support the same conclusion.
Plaintiffs maintain that it would be erroneous to interpret article II, § 7 in this manner because doing so would render the absentee ballot provisions of article II, § 2 superfluous. We recognize that the general/specific cannon of construction seeks to avoid "the superfluity of a specific provision that is swallowed by the general one, violating the cardinal rule that, if possible, effect shall be given to every clause and part of a statute" (RadLAX Gateway Hotel, LLC v Amalgamated Bank, 566 US 639, 645 [2012] [internal quotation marks, brackets and citation omitted]; see generally Matter of Hoffmann v New York State Ind. Redistricting Commn., ___ NY3d ___, 2023 NY Slip Op 06344, *7 [2023]). However, it bears emphasis that this "is not an absolute rule" and may be "overcome by textual indications that point in the other direction" (RadLAX Gateway Hotel, LLC v Amalgamated Bank,566 US at646-647). From a textual perspective, we do not disagree with plaintiffs' contention that broadly construing article II, § 7 as authorizing universal mail-in voting does, in effect, render article II, § 2 generally unnecessary relative to this issue. Even so, that consequence does not, in our view, satisfy plaintiffs' heavy burden to establish the Act's unconstitutionality beyond a reasonable doubt (see generally Cohen v Cuomo, 19 NY3d 196, 201-202 [2012]).[FN7] The intervenors astutely note that article II, § 2 still serves a purpose by enabling the Legislature, if it so desires, to provide special voting procedures for the individuals enumerated in that section, while at the same time declining to extend such procedures to other voters not similarly situated (see generally Matter of Burr v Voorhis, 229 NY at 388 [noting that the Legislature is authorized to adopt "reasonable, uniform and just regulations" regarding voting which are consistent with the Constitution]). In other words, article II, § 2 protects the unique status of the class of voters enumerated in that section by enshrining the Legislature's ability to pass laws permitting special methods of voting for these individuals without concomitantly extending these procedures to the entire electorate. But this does not mean that the inverse is also true such that the section precludes the Legislature from passing a statute expanding alternative voting methods to the entire electorate, as was done here.
Accepting plaintiffs' position that article II, § 2 still implicitly requires in-person voting outside the absentee voter categories enumerated therein would require us to disregard the historical record demonstrating [*10]that the absentee voting provisions of this section were enacted as an exception to the default in-person voting rule contained in article II, § 1 until 1966 and the deletion of the Election District Provision at that time (see generally Matter of Siwek v Mahoney, 39 NY2d 159, 164-165 [1976] [upholding New York's uniform mail registration statute in a circumstance where the Legislature's implementation of the law under the power conferred to it by article II, § 6 "rendered dormant" article II, § 5's requirement of annual, in-person registration]; compare Albence v Higgin, 295 A3d 1065, 1091 [Del Sup Ct 2022]). To construe article II, § 2 as now implicitly continuing the in-person voting rule after the repeal of the Election District Provision would render the wholesale deletion of that significant constitutional text meaningless (see McKinney's Cons Laws of NY, Book 1, Statutes § 193, Comment ["When provisions contained in an original act are omitted from an amendatory act, it is reasonable to presume that they were intentionally omitted"]; see also Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 22 NY3d 606, 625 [2014] ["(T)he very purpose and effect of an amendment is to amend the relevant portion of the Constitution, effectively repealing and voiding any prior version of the particular section so amended"]; compare Matter of Kuhn v Curran, 294 NY 207, 217 [1945] [analyzing whether the Legislature was authorized to increase the number of judicial districts of the state based on an 1894 constitutional amendment which incorporated the provisions of the 1869 constitution empowering the Legislature to "change" or "alter" the judicial districts of the State, while omitting the phrase "without increasing the number." Any uncertainty or doubt as to the import of this change on the power of the Legislature to create new judicial districts based on the term "alter" was removed by the constitutional amendment of 1905, which specifically authorized the Legislature to create a single new judicial district — meaning that the Constitution did not confer plenary power on the Legislature to create new judicial districts]). Considering that article II, § 1 has stood without the Election District Provision for more than half a century, we decline to do so.
Nor, given the foregoing, are we persuaded by plaintiffs' argument that article II, § 2, of its own accord, creates an implicit in-person voting requirement for voters outside the defined exemptions. Creating such a limitation by implication would effectively undermine the authority of the Legislature to prescribe the manner of elections under article II, § 7, as well as ignore the actual problem article II, § 2 was adopted to address in the first place — i.e., the creation of alternative voting methods (see Lyons v Secretary of Commonwealth, 490 Mass 560, 575, 577, 192 NE3d 1078, 1092, 1093 [2022] [upholding Massachusetts' universal mail-in voting law and emphasizing that the absentee ballot provisions [*11]of the Massachusetts Constitution, which grant "authority to the Legislature to provide for absentee voting" to voters who can satisfy specified criteria, make "no mention of limiting the Legislature's plenary authority to provide for other forms of voting or otherwise restricting voting to in person on election day"]). Stated differently, accepting plaintiffs' argument would require us to find that article II, § 2 now perpetuates the very rule requiring in-person voting that it was enacted as an exception to. To the extent plaintiffs suggest that our interpretation of article II, § 7 effects an implicit repeal of article II, § 2, they are incorrect. "Repeal by implication results from some enactment, the terms and operation of which cannot be harmonized with the terms and necessary effect of an earlier [enactment]" (McKinney's Cons Laws of NY, Book 1, Statutes § 391, Comment; accord Matter of Brooklyn Children's Aid Socy. v Prendergast, 166 App Div 852, 855 [2d Dept 1915], affd 215 NY 705 [1915]). Sections 2 and 7 of NY Constitution article II are not in conflict with one another. Rather, they embrace the authority of the Legislature to adopt alternative methods of voting.
Finally, we are unpersuaded by the argument of Kosinski [FN8] Although Kosinski is a named defendant, he actually supports plaintiffs' position on this appeal. that the State defendants are judicially estopped from arguing that the Legislature had the authority to implement universal mail-in voting. "[J]udicial estoppel provides that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, it may not thereafter, simply because its interests have changed, assume a contrary position" (Northacker v County of Ulster, 212 AD3d 86, 91 [3d Dept 2022] [internal quotation marks and citations omitted]). "For the doctrine to apply, there must be a final determination endorsing the party's inconsistent position in the prior proceeding" (12 New St., LLC v National Wine & Spirits, Inc., 196 AD3d 883, 885 [3d Dept 2021] [internal quotation marks and citations omitted]; see Ghatani v AGH Realty, LLC, 181 AD3d 909, 911 [2d Dept 2020]). Kosinski astutely notes that, in briefing before this Court and the Fourth Department on several prior appeals, the State defendants baldly asserted that "the Constitution has generally been regarded as continuing to retain the requirement [of in-person voting] implicitly" after the repeal of the Election District Provision. However, in-person voting was not the question before the court in those cases and the decisions on appeal did not endorse — let alone address — this position (see e.g. Cavalier v Warren County Bd. of Elections, 210 AD3d 1131 [3d Dept 2022]; Matter of Amedure v State of New York, 210 AD3d 1134 [3d Dept 2022]; Ross v State of New York, 198 AD3d 1384 [4th Dept 2021]). Accordingly, neither the State defendants nor the intervenors are judicially estopped from taking an alternative position on this appeal[*12].
In light of the foregoing, we conclude that universal mail-in voting does not violate article II of the NY Constitution and was properly implemented through legislative enactment. We recognize that a proposed constitutional amendment to authorize no-excuse absentee voting was not ratified by the electorate at the November 2, 2021 election (see NY Const, art XIX, § 1). Even so, that the Legislature, in first proposing the amendment in 2019, may have assumed that a constitutional amendment was necessary to implement universal mail-in voting does not make it so (compare Matter of Harkenrider v Hochul, 38 NY3d at 516-517). The fact remains that, in its current form, the NY Constitution contains no requirement — express or implied — mandating that voting occur in-person on election day. At the same time, article II, § 7 grants the Legislature broad, plenary power to prescribe the manner in which voting is to occur. In these circumstances, plaintiffs have not satisfied their heavy burden to prove the Act's unconstitutionality beyond a reasonable doubt. Our decision upholding the Act comports with the NY Constitution's embrace of broad voting rights for the state electorate, the history and language of article II, and the fundamental right to vote (see Matter of Rosenstock v Scaringe, 40 NY2d 563, 564 [1976]). To the extent we have not expressly addressed any of plaintiffs' remaining contentions, they have been considered and found unavailing.
Garry, P.J., Egan Jr., Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1:The Attorney General's office represents that, as of the filing of their brief, "at least 18,000 applications to vote early by mail have been filed, and early mail ballots have been cast in two special elections, multiple village elections, and the [April 2, 2024] presidential primary."
Footnote 2:In November 2021, the state electorate rejected a proposal to amend the NY Constitution to permit no-excuse absentee voting (see New York State Board of Elections, Authorizing No-Excuse Absentee Ballot Voting [summarizing ballot question for Nov. 2, 2021 general election], available at https://results.elections.ny.gov/contest/590 [last accessed Apr. 30, 2024]). The ballot measure, entitled "Authorizing No-Excuse Absentee Ballot Voting," read as follows: "The proposed amendment would delete from the current provision on absentee ballots the requirement that an absentee voter must be unable to appear at the polls by reason of absence from the county or illness or physical disability. Shall the proposed amendment be approved?"

Footnote 3: Prior to dismissing the 
complaint, Supreme Court denied plaintiffs' motion for a preliminary injunction 
pending appeal, which was denied by this Court on January 16, 2024 (2024 NY Slip 
Op 60916[U] [3d Dept 2024]). Plaintiffs concede that the appeal from the denial 
of their motion for a preliminary injunction is "now moot following Supreme 
Court's dismissal of the underlying action."
Footnote 4:We take note that an envelope containing a completed absentee ballot may also be delivered to a local BOE (see Election Law § 8-410).
Footnote 5: Plaintiffs do not dispute that 
the Election District Provision set a default requirement for in-person voting.
Footnote 6: The residency requirement and 
age limitation were subsequently reducted to 30 days and 18 years, respectively 
(see NY Const, art II, § 1, amended Nov. 7, 1995).
Footnote 7: The intervenors astutely note 
that article II, §
2 still serves a purpose by enabling the Legislature, if it so desires, to 
provide special voting procedures for the individuals enumerated in that 
section, while at the same time declining to the extend such procedures to other 
voters not similarly situated (see generally Matter of Burr v Voorhis, 
229 NY at 388 [noting that the Legislature is authorized to adopt "reasonable, 
uniform and just regulations" regarding voting which are consistent with 
the Constitution]). In other words, article II, § 2 protects the unique 
status of the class of voters enumerated in that section by enshrining the 
Legislature's ability to pass laws permitting special methods of voting for 
these individuals without concomitantly extending these procedures to the entire 
electorate. But this does not mean that the inverse is also true such that the 
section precludes the Legislature from passing a statute expanding alternative 
voting methods to the entire electorate, as was done here.
Footnote 8:
Although Kosinski is a named defendant, he actually supports plaintiffs' 
position on this appeal.